IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY MUSTAFA LIFE WILLIAMS,<br>    Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 21-CV-0312 |
| | : | |
| GARY HAMMER, *et al.*,<br>    Defendants. | : | |

## MEMORANDUM

**GOLDBERG, J.**                                                                                        **MAY 14, 2021**

      Plaintiff Anthony Mustafa Life Williams, a prisoner currently incarcerated at SCI-Somerset, filed this civil rights action pursuant to 42 U.S.C. § 1983 naming as Defendants Gary Hammer, a Colonial Regional Police Department detective; Mark Mazzitelli, a Whitehall Township police detective; Northampton County Assistant District Attorney Katherine Kurnas, and Northampton County. Williams, who was previously granted leave to proceed *in forma pauperis*, has complied with the Court's prior Order (ECF No. 10) to submit a Second Amended Complaint ("SAC"). For the following reasons, the SAC will be dismissed in part pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and the remaining claims will be served for a responsive pleading.

## I.     FACTUAL ALLEGATIONS

      Williams alleges that on July 29, 2019 Defendant Hammer filed a criminal complaint against him, causing Williams to be arrested for burglary and related charges. (ECF No. 13 at 2.)[1] To support the criminal complaint, Hammer allegedly signed an affidavit of probable cause stating that he received a report on January 9, 2019 from Lisa Emery that an unknown person entered her

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

1

home by breaking through a glass door. (*Id.*) Emery's neighbor, Joshua Moretz, reported that he saw a black Dodge Caliber in the victim's driveway. (*Id.*) Emery reported her television, an Apple Mac Book computer, headphones, and jewelry were missing from the home. (*Id.*)

The next day, Hammer contacted a pawnshop employee who reported that a person at the shop sold a television and an Apple Mac Book computer. (*Id.*) Hammer stated in his affidavit that he was able to determine through the serial numbers that the items at the pawnshop were Emery's items. (*Id.*) The pawnshop provided Hammer with the driver's license information belonging to Williams that it received from the seller of the items. (*Id.*) Hammer stated that the victim's computer had been reset to factory default settings and that Williams was the only contact on the computer.

Hammer allegedly learned that Williams was a suspect in another burglary that occurred on December 28, 2018 in Emmaus, Pennsylvania that also involved entry through a broken door. (*Id.*) He learned that Williams operated a black Dodge Journey, which has a similar appearance to a Dodge Caliber. (*Id.*) Hammer learned that Williams had been arrested by the Whitehall Township police for a day-time burglary on February 4, 2019 (*Id*. at 3.) Hammer contacted Defendant Mazzitelli of the Whitehall Township Police Department, who informed Hammer that he had seized Williams's phone. (*Id.*) Mazzitelli reported that Williams used the phone to take pictures of the items he stole and researched their value. (*Id.*) Mazzitelli also told Hammer that Williams was seen in a black Dodge Journey at the burglary scene. (*Id.*)

Williams alleges he was arrested based on the criminal complaint and placed in Northampton County Prison during the COVID-19 pandemic. (*Id.*) His arrest also caused him to be detained as a parole violator. (*Id.*) Williams asserts that he was the victim of false arrest and malicious prosecution because Hammer omitted from his affidavit that the pawnshop failed to give

him a receipt showing that Williams was the person who sold the items. (*Id.*) Hammer also misstated facts surrounding his contact with the pawnshop; he allegedly had alerted the shop earlier to be on the lookout for the stolen items but failed to recite that fact in the affidavit. (*Id.*) He also had no evidence to support his claim that Williams had reset the computer and input his own name and contact information. (*Id.* at 4.) He also misrepresented the similarity of the vehicles and that Williams was a suspect in the Emmaus burglary, when he had only been charged with receiving stolen property, and those charges were dismissed on September 4, 2019. (*Id.*) Williams alleges that Hammer and Mazzitelli conspired to create false facts to tie Williams to the Emery burglary, including the type of vehicle and the content of the cell phone data. (*Id.*)

Williams alleges that Hammer changed facts from the criminal complaint when he testified at a preliminary hearing on September 11, 2019. He denied that Williams was seen at the burglary location in Whitehall despite stating that fact in the criminal complaint. (*Id.*) Hammer and Mazzitelli allegedly testified falsely that pictures of stolen goods were on Williams's cell phone knowing that no such pictures existed. (*Id.*) Allegedly, Hammer also stated falsely at a hearing on November 9, 2020 that the photos came from Williams's phone, but the assistant district attorney "corrected him making it clear that isn't were [sic] the photos of the TV and the computer came from." (*Id.* at 5.) The hearing evidence also allegedly showed that the research about computers was conducted before the Emery robbery took place. (*Id.*)

According to Williams, on December 3, 2020, four of the five charges in the criminal complaint were dismissed by the presiding Common Pleas Court judge and the remaining charge was dismissed by the assistant district attorney, Defendant Katherine Kurnas. (*Id.*) He asserts that Hammer and Mazzitelli falsely arrested and imprisoned him due to Williams being a Black African and Latino ex-offender, who advocated against police brutality. He alleges the two Defendants

3

violated his rights to due process, equal protection, to be free from unreasonable search and seizure, and his First Amendment freedoms of speech, association, assembly, petition government. (*Id.* at 5-6.)

Williams alleges that Northampton County knew or should have known that the improper training of Defendant Assistant District Attorney Kurnas allowed her to assist Hammer and Mazzitelli to violate Williams's rights because she failed to fact check the testimony or intentionally used false information at the preliminary hearing. (*Id.* at 6.) Kurnas allegedly quoted Hammer's false affidavit in a brief she filed opposing Williams's habeas corpus petition filed in the Court of Common Pleas. (*Id.*) She also presented false evidence about the cell phone pictures and that Williams researched the value of the TV and computer. (*Id.* at 6-7.) Williams contends that Northampton County policy makers knew or should have known that the police officers Defendants and Kurnas had opportunities to present false evidence and did not follow their oaths, and Northampton County failed to establish training, supervision and disciplinary policies that would have discouraged Defendants from providing false and fabricated evidence. (*Id.* at 7.) He further contends that Kurnas acted unreasonably and deliberately failed to investigate the facts of his case. (*Id.*)

A review of public records shows that Williams was arrested by Defendant Hammer on July 29, 2019 and charged with burglary, theft by unlawful taking of movable property, receiving stolen property, criminal trespass, and criminal mischief. *See Commonwealth v. Williams*, CP-48-CR-3017-2019. Defendant Kurnas is listed as the Assistant District Attorney for the case. (*Id.*) On December 9, 2020, all charges save for receiving stolen property were ordered dismissed by Judge Paula A. Roscioli of the Northampton County Court of Common Pleas, and the receiving stolen property charge was *nolle prossed* by the Commonwealth on the same day. (*Id.*)

## II. STANDARD OF REVIEW

Because the Court granted Williams leave to proceed *in forma pauperis*,[2] 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the SAC if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.* As Williams is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

### A. Claims Against ADA Kurnas

Kurnas, in her role as an Assistant District Attorney representing the Commonwealth, allegedly quoted Hammer's false affidavit in a brief she filed opposing Williams's habeas corpus petition filed in the Court of Common Pleas, presented false evidence about the cell phone pictures and that Williams researched the value of the TV and computer, and unreasonably and deliberately failed to investigate the facts of Hammer's case. This claim is not plausible and will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B).

Prosecutors like Defendant Kurnas are entitled to absolute immunity from liability under § 1983 for acts that are "intimately associated with the judicial phase of the criminal process" such as "initiating a prosecution and . . . presenting the State's case." *Imbler v. Pachtman*, 424 U.S.

---

[2] However, as Williams is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

409, 430-31 (1976). Absolute immunity extends to the decision to initiate a prosecution, *Imbler*, 424 U.S. at 431, including "soliciting false testimony from witnesses in grand jury proceedings and probable cause hearings," *Kulwicki v. Dawson*, 969 F.2d 1454, 1465 (3d Cir. 1992), presenting a state's case at trial, *Imbler*, 424 U.S. at 431, and appearing before a judge to present evidence. *Fogle v. Sokol*, 957 F.3d 148, 159-60 (3d Cir. 2020). Because the only allegations against Kurnas involve her activity in the judicial phase of Hammer's criminal case on behalf of the Commonwealth, she is entitled to absolute immunity.

B.  **Claims Against Northampton County**

Hammer alleges that Northampton County knew or should have known that the improper training of Defendant Assistant District Attorney Kurnas allowed her to assist Hammer and Mazzitelli to violate Williams's rights because she failed to fact check the testimony or intentionally used false information at the preliminary hearing. (*Id.* at 6.) Williams also contends that Northampton County policy makers knew or should have known that the police officer Defendants and Kurnas had opportunities to present false evidence and did not follow their oaths, and Northampton County failed to establish training, supervision and disciplinary policies that would have discouraged Defendants from providing false and fabricated evidence. (*Id.* at 7.) These claims are also implausible and will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B).

Local governments like Northampton County can be liable as "persons" under § 1983, however, this liability extends only to "their *own* illegal acts." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (emphasis in original) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)); *see Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 665-83 (1978). This limitation is based on the well-established principle that municipalities "are not vicariously liable under §

1983 for their employees' actions." *Connick*, 563 U.S. at 60; *Monell*, 436 U.S. at 691 ("[A] municipality cannot be held liable *solely* because it employs a tortfeasor — or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory.") (emphasis in original). under *Monell v. Dept. of Social Servs.*, 436 U.S. 658 (1978).

Rather, to plead a basis for municipal liability under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978). "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). For a custom to be the proximate cause of an injury, the Defendant must have "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to his injury." *Id.* (internal quotations and alterations omitted).

A plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019). "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult

choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.*

As the United States Court of Appeals recently stated,

> If the alleged policy or custom at issue is a failure to train or supervise (as it is here), the plaintiff must show that this failure "amounts to 'deliberate indifference' to the rights of persons with whom [the municipality's] employees will come into contact." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014) (quoting *Carter v. City of Phila.*, 181 F.3d 339,357 (3d Cir. 1999)). "Ordinarily," this requires a plaintiff to identify a "'pattern of similar constitutional violations by untrained employees'" that "puts municipal decisionmakers on notice that a new program is necessary." *Id.* at 223 (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)). Otherwise, the plaintiff needs to show that failure to provide the identified training would "likely . . . result in the violation of constitutional rights" — i.e., to show that "the need for more or different training [was] so obvious." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).

*Johnson v. City of Phila.*, 975 F.3d 394, 403 (3d Cir. 2020).

Williams alleges, and public records confirm, that Defendant Hammer is a Colonial Regional Police Department detective, and Mark Mazzitelli is a Whitehall Township police detective. Hammer and Mazzitelli are, accordingly, not Northampton County employees, but rather employees of their respective municipalities. Williams alleges no other connection between Northampton County and Hammer and Mazzitelli. Because there are no allegations that Hammer and Mazzitelli are Northampton County employees, Northampton County cannot be liable under *Monell* based on a failure to train theory or based on their involvement in Williams's criminal case.

The allegations based on Kurnas's actions also fail to state a plausible claim against Northampton County. Williams fails to allege that Northampton County had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to his injury. Indeed, while he alleges the facts of his own criminal proceeding, Williams makes no allegations of prior unlawful conduct upon which he may assert knowledge by Northampton County to establish proximate cause of any injury. He alleges no pattern of similar

8

constitutional violations by untrained employees. In short, he has failed to allege that Northampton County's failure to train or supervise Kurnas amounts to deliberate indifference. Accordingly, all claims against Northampton County will be dismissed.[3]

## V. CONCLUSION

For the reasons stated, Williams's claim against Defendant Kurnas is dismissed with prejudice. His claims against Northampton County based on the actions of Defendants Hammer and Mazzitelli are also dismissed with prejudice, while the claim against Northampton County based on the actions of Defendant Kurnas is dismissed without prejudice. The remaining claims against Hammer and Mazzitelli will be served for a responsive pleading. However, prior to directing service on these claims, the Court will provide Williams an opportunity to amend his claim against Northampton County based on Kurnas's actions. An appropriate Order follows.

---

[3] Because the Court cannot say that this point that Williams can never assert a plausible *Monell* claim against Northampton County based on Kurans's actions, this portion of the SAC will be dismissed without prejudice and Williams will be granted the option of filing a further amendment or proceeding on the claims that pass § 1915 screening.