IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY MUSTAFA LIFE WILLIAMS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 21-CV-0312 |
| | : | |
| GARY HAMMER, *et al.*, | : | |
| Defendants. | : | |

MEMORANDUM OPINION

**Goldberg,    J.**                                                                                        **April 26, 2022**

Plaintiff Anthony Mustafa Life Williams brings this action against Defendants Detective Gary Hammer, Detective Mark Mazzitelli, Colonial Regional Police Department, Whitehall Township Police Department, and Northampton County challenging various events surrounding his arrest and conviction in 2019. On September 3, 2021, Defendants Detective Mazzitelli and Whitehall Township Police Department filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), and, on October 29, 2021, Defendant Northampton County filed a separate Motion to Dismiss under Fed. R. Civ. P. 12(b)(6).[1] Plaintiff also moved for a default judgment against Northampton County. For the following reasons, I will grant the Motions to Dismiss and dismiss all claims against Defendants Mazzitelli, Whitehall Township Police Department, and Northampton County with prejudice. I will also deny Plaintiff's Motion for Default Judgment.

---

[1] On September 1, 2021, Defendants Colonial Regional Police Department and Gary Hammer filed an Answer.

I.  **FACTS IN THE THIRD AMENDED COMPLAINT**

The following facts are set forth in the Third Amended Complaint.[2]

On July 29, 2019, Detective Gary M. Hammer of the Colonial Regional Police Department filed a criminal complaint and caused Plaintiff to be arrested for burglary and related charges. (Third Am. Compl. ¶ 1.) The affidavit of probable cause attached to the criminal complaint provided that:

> On 01/09/19 the affiant's department received a report from a Lisa Emory who resides at 4080 Jacksonville Rd Bethlehem, Pa. She reported that an unknown person entered her home by breaking the glass in the front door of the house and the suspect took items from the house. The burglary occurred between 0630hrs and 1830hrs on 01/09/19. The neighbor of Emery a Joshua Moratz who resides next to the victim, reported that about 1400 hrs on 01/09/19 he heard a car door close and he looked out the window. He reported that he saw a black vehicle in the victim's driveway. He described the vehicle as a black Dodge Caliber. He stated that he didn't think anything of it because the victim's house was for sale. The home owner reported that stolen from her home was TCL 43" flat screen television with a value of $400.00, an Apple Mac Book Pro computer with a value of $2,000.00 a pair of Boise noise cancelling headphones $300.00 and a jewelry box full of jewelry total [sic] $500.00.
>
> On 01/10/19 the affiant contacted the pawn shop called Buy Sell Trade located on 1125 Hamilton Blvd Allentown and they reported that a person was just in the store and sold them a TCL television and a[n] Apple Mac Book Pro computer for $70.00. The affiant went to the pawnshop and was able to determine through the serial numbers that the items at the pawnshop were the homeowner's items. The pawnshop advised the affiant that they got a copy of the

---

[2] In deciding a motion under Federal Rule of Civil Procedure, the court must accept all factual allegations in the complaint as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading, the plaintiff may be entitled to relief. Atiyeh v. Nat'l Fire Ins. Co. of Hartford, 742 F. Supp. 2d 591, 596 (E.D. Pa. 2010).

The Third Amended Complaint, once submitted to and accepted by the Court, became the governing pleading in the case because an amended complaint supersedes the prior pleading. See Shahid v. Borough of Darby, 666 F. App'x 221, 223 n.2 (3d Cir. 2016) (per curiam) ("Shahid's amended complaint, however, superseded his initial complaint." (citing W. Run Student Hous. Assocs. LLC v. Huntingdon Nat'l Bank, 712 F.3d 165, 171 (3d Cir. 2013).

> driver's license of the person who sold them the items. The driver's license was that of the defendant. The affiant found looking at the victim's computer, that the defendant did a factory reset of the laptop computer and put himself in as the only contact.
>
> The affiant learned that the defendant was a suspect in a daytime burglary that had occurred in the Borough of Emmaus on 12/28/2018 where a door window was broken to gain entry. The affiant also found that the defendant owns and operates a black Dodge Journey which looks the same as a black Dodge Caliber that was seen in the victim's driveway at the time of the burglary.
>
> The affiant found that the defendant was arrested by the Whitehall Twp Police Department for a daytime burglary that had occurred at that location on 02/04/19. The Affiant contacted Det. Mazzitelli of the Whitehall Twp Police Department. He informed the affiant that he had seized the defendant's phones. He informed me that a search warrant was executed on both phones. He found that the defendant would commonly use his phone and take pictures of the items that he stolen [sic] and research the value of his stolen items. Mazzitelli stated that the defendant did that involving the items he had stolen from Whitehall Twp. Mazzitelli also informed the affiant that the defendant was seen in his black Dodge Journey at the burglary scene.
>
> The affiant received a copy of the computer forensic report for the defendant's phones. The affiant found that soon after the burglary at the Emery residence at 4060 Jacksonville Rd the defendant had taken a picture of a 43 inch TCL flat screen television and he researched the value of an Apple MAC Book Computer.
>
> The homeowner advised the affiant that the front door damage that was done by the defendant braking [sic] into the home totaled $900.00.

(Pl.'s Opp'n Mot. to Dismiss, ECF No. 36, Ex. B.)[3]

---

[3] As a general rule, a district court reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6) "may not consider matters extraneous to the pleadings" without converting the motion into one for summary judgment. In re Burlington Coat Factory Secs. Litg., 114 F.3d 1410, 1426 (3d Cir. 1997). The rule, however, has three exceptions that permit courts to consider: (1) exhibits attached to the complaint; (2) matters of public record; and/or (3) undisputedly authentic documents integral to or explicitly relied upon in the complaint. Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014).

3

Based on the affidavit of probable cause, Plaintiff was arrested on July 29, 2019 and charged with burglary, theft by unlawful taking of movable property, receiving stolen property, criminal trespass, and criminal mischief. (Id. at ¶ 2(g)); see also Commonwealth v. Williams, CP-48-CR-3017-2019. He was placed in a cell in Northampton County with four people, causing him high anxiety due to possible COVID-19 exposure and exposure to "deplorable conditions." In addition, the arrest and charges were considered by the parole board as a parole violation from a different offense. (Third Am. Compl. ¶ 2(g).)

Plaintiff alleges that the affidavit in support of the criminal complaint was deficient or misleading in multiple respects:

- Detective Hammer omitted that the pawn shop gave him a piece of paper with Plaintiff's license and phone number, not a receipt that Plaintiff sold them any items.

- Detective Hammer misstated the facts surrounding contacting the pawn shop. Plaintiff alleges that Hammer contacted the pawn shop early in the morning while on the lookout for the stolen items. The pawn shop received the stolen property later in the day and, knowing it was stolen, called Hammer indicating that they had the items, which he came to retrieve the next day.

- Detective Hammer claimed that Plaintiff reset the stolen computer and put his name and contact information in that computer but had no proof to back up that statement.

- Detective Hammer stated that Plaintiff owned the same type of car that was seen at the burglary scene and that Plaintiff was a suspect in a previous burglary. Yet, Hammer knew that Plaintiff had been charged six days before with receiving stolen property, not burglary, and that the charges were dismissed on September 2019.

- Plaintiff owned a black Dodge Journey, not a Dodge Caliber as was reported by a witness to the January 2019 burglary. Defendants Hammer and Mazzitelli conspired to create a

---

The affidavit of probable cause attached as Exhibit B to Plaintiff's Response in Opposition to the Motion to Dismiss is a public document and is explicitly relied upon and paraphrased in the Third Amended Complaint. As such, I may consider this document when ruling on the Motions to Dismiss. See Shelley v. Wilson, 339 F. App'x 136, 137 (3d Cir. 2009) (noting that the district court properly considered criminal complaint and arrest warrant in deciding a motion to dismiss a false arrest claim).

- false fact that Plaintiff was seen in his black Dodge Journey at the Whitehall Township crime scene.

- Defendants Hammer and Mazzitelli conspired to create a false story that Plaintiff would commonly use his phone to take pictures of items that he would steal and research the value of them.

Plaintiff further alleges that Detectives Hammer and Mazzitelli knew these allegations were false. (Id. ¶¶ 4–9, 11–12.)

The Third Amended Complaint states that at a hearing on November 9, 2020 in Northampton County, Defendant Hammer claimed that certain photos of the stolen television and computer came from Plaintiff's phone. The Assistant District Attorney, Katherine Kurnas, corrected Hammer and stated that the photos did not come from Plaintiff's phone. The Third Amended Complaint also alleges that, at the same hearing, it was established that Plaintiff was researching Mac computer products on his phone well before the neighbor reported seeing a black SUV in the target property's driveway. On December 3, 2020, the judge dismissed four of the five charges. The Assistant District Attorney *nolle prossed* the remaining charge on December 9, 2020. (Id. ¶¶ 13–15.)

Plaintiff alleges that Detectives Hammer and Mazzitelli knowingly, willfully, and intentionally provided false and fabricated evidence in support of the affidavit of probable cause. As a result, Plaintiff claims he was falsely arrested and imprisoned for those charges. (Id. ¶¶ 16–17.)

Plaintiff further claims that neither Detective Hammer nor Detective Mazzitelli were properly trained or supervised by their respective municipalities to investigate, fact check, and submit truthful facts to the District Attorney's Office. According to Plaintiff, both Colonial Regional Police Department and Whitehall Township Police Department knew or should have known that the lack of training or supervision would permit their officers to submit cases to the

district attorney's office in violation of citizens' constitutional rights. Likewise, both police departments allegedly failed to put into a place a procedure to allow citizens of each area to report the violation of these constitutional rights and to discipline officers for engaging in such acts. As a result of the lack of policies, Detectives Hammer and Mazzitelli submitted false and inaccurate information, which resulted in Plaintiff's sixteen-month prosecution. (Id. ¶¶ 20, 21, 22, 24.)

Plaintiff also contends that the Assistant District Attorney relied on multiple inaccuracies and falsehoods in her brief submitted against Plaintiff. (Id. ¶¶ 25–27.) Plaintiff notes that because prosecutors are absolutely immune for their actions, they are able to prosecute cases without sufficient information and, in turn, violate citizens' constitutional rights. (Id. ¶ 30.) Plaintiff alleges that the failure of Northampton County policy makers to have policies in place that would provide checks and balances of the District Attorney's Office allowed the prosecution of Plaintiff based on false and fabricated evidence. (Id. ¶ 31.)

## II.  PROCEDURAL HISTORY

On January 15, 2021, Plaintiff filed a complaint against Northampton County, Gary Hammer, Assistant District Attorney Kathrine Kurnas, and Mark Mazzitelli. He filed a first amended complaint on February 3, 2021. I dismissed that complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and granted him leave to file a second amended complaint, which he did on May 7, 2021. I again screened this complaint under 28 U.S.C. § 1915(3)(2)(B)(ii) and dismissed all claims against Defendant Katherine Kurnas with prejudice and all claims against Northampton County to the extent they were based on the conduct of Defendants Hammer, Mazzitelli, and Kurnas. I again granted Plaintiff leave to file a third amended complaint, which he did on June 15, 2021.

The Third Amended Complaint was served on all Defendants. Defendants Colonial Regional Police Department and Detective Gary Hammer filed an answer with affirmative defenses on September 1, 2021. Defendants Detective Mark Mazzitelli and Whitehall Township Police Department filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on September 3, 2021. Defendant Northampton County subsequently filed its own Rule 12(b)(6) Motion to Dismiss. Plaintiff also filed a Motion for Default against Defendants.

On November 24, 2021, Plaintiff filed a Fourth Amended Complaint against all Defendants, including previously-dismissed Defendant Katherine Kurnas. I dismissed that complaint given Plaintiff's failure to seek leave as required by Federal Rule of Civil Procedure 15.

### III. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotations omitted). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and only a complaint that states a plausible claim for relief survives a motion to dismiss. Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct. Id. at 679.

The Court of Appeals has detailed a three-step process to determine whether a complaint meets the pleadings standard. Bistrian v. Levi, 696 F.3d 352 (3d Cir. 2014). First, the court outlines the elements a plaintiff must plead to state a claim for relief. Id. at 365. Next, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." Id. Finally, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'" Id. (quoting Iqbal, 556 U.S. at 679). The last step is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Iqbal, 556 U.S. at 679).

A *pro se* complaint should be "held to less stringent standards than formal pleadings drafted by lawyers." U.S. ex rel. Walker v. Fayette Cty., Pa., 599 F.2d 573, 575 (3d Cir. 1979), (citing Haines v. Kerner, 404 U.S. 519, 521 (1972)). The court must construe the facts stated in the complaint liberally in favor of the plaintiff. Haines, 404 U.S. at 520. "Yet there are limits to our procedural flexibility. For example, *pro se* litigants still must allege sufficient facts in their complaints to support a claim." Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013). Thus, even a *pro se* complaint must conform with the requirements of Rule 8(a) of the Federal Rules of Civil Procedure, which "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" or "naked assertions" that are devoid of "factual enhancement." Iqbal, 556 U.S. at 678 (internal quotations omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' will not do." Id.

### IV. MOTIONS TO DISMISS

#### A. Claims Against Officer Mazzitelli

Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983. The statute itself does not independently create substantive rights, but rather merely "provides a remedy for deprivations of rights established elsewhere in the Constitution or federal laws." Kopec v. Tate, 361 F.3d 772, 775–76 (3d Cir. 2004). A plaintiff may bring a § 1983 action if he alleges that a person acting under color of state law deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. 42 U.S.C. § 1983. In other words, a plaintiff alleging a § 1983 violation must demonstrate that: (1) the defendants acted under color of [state] law; and (2) their actions deprived [the plaintiff] of rights secured by the Constitution or federal statutes. Anderson v. Davila, 125 F.3d 148, 159 (3d Cir. 1997).

Plaintiff alleges that Officer Mazzitelli violated his constitutional rights by (a) submitting false and inaccurate information to the District Attorney's office, and (b) conspiring with Detective Hammer to distort the truth and fabricate evidence.

To plead a fabrication-of-evidence claim, a plaintiff must allege that "there is a reasonable likelihood that, absent that fabricated evidence, the defendant would not have been criminally charged." Black v. Montgomery Cty., 835 F.3d 358, 371 (3d Cir. 2016), cert. denied, 137 S. Ct. 2093. To meet the "reasonable likelihood" standard, the plaintiff must establish a "meaningful connection" between the due process injury and the use of fabricated evidence. Id. at 372. The plaintiff must also establish "that the fabricated evidence 'was so significant that it could have affected the outcome of the criminal case.'" Id. (quoting Halsey v. Pfeiffer, 750 F.3d 273, 294 (3d

9

Cir. 2014)). Further, there is a "notable bar" for evidence to be considered "fabricated." Id. "[T]estimony that is incorrect or simply disputed should not be treated as fabricated merely because it turns out to have been wrong." Halsey, 750 F.3d at 295. Instead, there must be persuasive evidence that the fabricated evidence's proponents knew the evidence was incorrect or offered it in bad faith. Id. At the motion to dismiss stage, a plaintiff must plead sufficient facts to establish that the defendant officers either knowingly stated deliberate falsehoods or acted with reckless disregard for the truth. Basile v. Twp. of Smith, 752 F. Supp. 2d 643, 657–58 (W.D. Pa. 2010).

      Here, the allegations of fabricating evidence against Detective Mazzitelli are sparse at best. Plaintiff asserts that, in connection with his investigation of the January 2019 burglary, Detective Hammer discovered that Plaintiff had been arrested by the Whitehall Township Police Department for a burglary occurring on February 4, 2019. The Third Amended Complaint details that Detective Hammer reached out to Detective Mazzitelli of Whitehall Township, and Detective Mazzitelli indicated that, according to his own investigation, the perpetrator had used his phone to take pictures of stolen items and research their value. Detective Mazzitelli also conveyed to Detective Hammer that Plaintiff was seen at the February 2019 burglary scene in his black Dodge Journey. Detective Hammer then included those facts in his affidavit of probable cause for the January 2019 burglary. Nothing in these allegations allows any reasonable inference that Officer Mazzitelli conveyed anything other than the results of his investigation of the separate February 2019 burglary.

      Likewise, Plaintiff fails to adequately plead a conspiracy claim against Detective Mazzitelli. In order to state a civil conspiracy under section 1983, a plaintiff must "demonstrate (1) an agreement between two or more conspirators (2) to deprive the plaintiff of a constitutional

right, (3) under color of state law." Kist v. Fatula, No. 2006-cv-67, 2007 WL 2404721, at *8 (W.D. Pa. Aug. 17, 2017) (internal quotations omitted). "In order to properly plead the existence of an agreement '[t]he plaintiff must make specific factual allegations of combination . . . or understanding among all or any of the defendants to plot, plan, or conspire to carry out the alleged chain of events.'" Id. (quoting Hammond v. Creative Fin. Planning, 800 F. Supp. 1244, 1250 (E.D. Pa. 1999)).

Here, the Third Amended Complaint contains no allegations of any agreement between Detective Hammer and Detective Mazzitelli. Rather, as noted above, Plaintiff simply alleges that Detective Hammer reached out to Detective Mazzitelli about the results of his investigation of a different burglary and found that some of those facts matched the facts of his own investigation into the January 2019 burglary. The Third Amended Complaint is devoid of any assertion that Detective Mazzitelli knew, prior to giving Detective Hammer the information, that the information would match any of the events involving the January 2019 burglary or that Detective Hammer would use that information in an affidavit of probable cause. Plaintiff's conclusory allegation that Detectives Hammer and Mazzitelli conspired to create certain false facts is insufficient to plausibly plead an agreement between the two officers to deprive Plaintiff of his constitutional rights. Accordingly, I will dismiss this claim as against Detective Mazzitelli.

### B. Claims Against Whitehall Township[4]

The standard for alleging § 1983 claims against a municipality is different than against an individual defendant. In order to recover against a municipality or municipal corporation under § 1983, a plaintiff must plead that the City itself caused an injury through the implementation of a policy, practice or custom. Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 694 (1978); Natale v. Camden Cty Corr. Facility, 318 F.3d 575 (3d Cir. 2003). Section 1983 imposes liability on a municipality where, "through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." Bd. of Cty. Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 404 (1997) (emphasis in original). The Third Circuit has recognized liability for local governments in three circumstances:

> First, the municipality will be liable if its employee acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity; . . . second, liability will attach when the individual has policy making authority rendering his or her behavior an act of official government policy; . . . third, the municipality will be liable if an official with authority has ratified the unconstitutional actions of a subordinate, rendering such behavior official for liability purposes.

McGreevy v. Stroup, 413 F.3d 359, 367 (3d Cir. 2005) (internal citations omitted).

A plaintiff must prove that the action in question, conducted pursuant to official municipal policy, caused his/her injury. Connick v. Thompson, 563 U.S. 51, 60–61 (2011). When a plaintiff alleges that a policy "concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the

---

[4] Plaintiff actually names Whitehall Township Police Department as opposed to Whitehall Township. It is well established that a police department cannot be sued. "In Section 1983 actions, police departments cannot be sued in conjunction with municipalities, because the police department is merely an administrative arm of the local municipality, and is not a separate judicial entity." Padilla v. Twp. of Cherry Hill, 110 F. App'x 272, 279 (3d Cir. 2004) (quotation omitted). Accordingly, I will liberally construe Plaintiff's complaint as suing Whitehall Township.

rights of persons with whom those employees will come into contact." Thomas v. Cumberland Cty., 749 F.3d 217, 222 (3d Cir. 2014) (citations omitted). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Connick, 563 U.S. at 61 (citations omitted).

In Mcternan v. City of York, Pa., 564 F.3d 636 (3d Cir. 2009), the Third Circuit offered guidance as to what constitutes proper pleading of a Monell claim. The Court remarked that "[t]o satisfy the pleading standard, [a plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was." Id. at 658. The Court further noted that the complaint in that case, which simply alleged that the plaintiff's rights were violated "due to the City's policy of ignoring First Amendment right[s]," was insufficient. Id. "Equally fatal," according to the Third Circuit, was that the complaint's allegations relevant to the Monell claim failed to allege conduct by a municipal decisionmaker. Id. Accordingly, the Third Circuit affirmed the dismissal of the Monell claim.

Repeatedly, courts within the Third Circuit have dismissed similar Monell allegations. See, e.g., Langford v. Gloucester Twp. Police Dept., No. 16-cv-1023, 2016 WL 7130912, at *6 (D.N.J. Dec. 7, 2016) (dismissing Monell claim where plaintiff alleged only that the township and police department "had policies and procedures of relying on uncorroborated statements, not verifying facts, willfully disregarding the constitutional rights of New Jersey citizens, arresting citizens without probable cause, and failing to investigate cases. Such allegations fail to identify any particular official statements, ordinances, regulations, or decisions that amount to a policy, and also fails to mention the existence of previous, similar constitutional violations to show a custom."); Jacobs v. Palmer, No. 14-cv-5797, 2015 WL 1033294, at *5–6 (E.D. Pa. Mar. 10, 2015) (finding that allegations regarding County's failure to train, supervise, discipline, or terminate

officers regarding past similar violations of constitutional rights were insufficient to state a Monell claim because the plaintiffs did not specify what exactly the custom or policy was that allegedly caused their injuries, did not identify the relevant municipal decision maker responsible for that policy, and have not alleged facts to show a pattern of similar violations by untrained employees); Collins v. Borough of Trainer, No. 13-cv-7613, 2014 WL 2978312, at *5 (E.D. Pa. July 1, 2014) (finding that complaint only plead conclusory allegations insufficient to state a Monell claim where plaintiff alleged that "Defendants developed and maintained policies, practices, procedures and customs exhibiting deliberate indifference to the Constitutional rights of persons . . . which caused violations of Plaintiff's constitutional and other rights as aforesaid.").

The Third Amended Complaint offers a similarly bareboned Monell claim against Whitehall Township. Plaintiff alleges only that Whitehall Township has "failed to supervise, train and discipline and . . . said failure amounts to deliberate indifference to the constitutional rights of the plaintiff." (Third Am. Compl., ECF No. 18 at p.14.) Plaintiff goes on assert that Whitehall Township Police Department has "failed to put in place and allow it to be public knowledge a procedure which would allow citizens of each area they cover to report the violation of constitutional rights and the defendants review and discipline said violations. As this training would or could have forced both detectives and others to not file charges that are not warranted." (Id. ¶ 22.) Nothing in this allegation identifies a pattern of similar violations, knowledge by a municipal policymaker, or a specific failure that led to the violations of Plaintiff's constitutional rights. Accordingly, I will dismiss the § 1983 claim against Defendant Whitehall Township Police Department.

### C.     <u>Claims Against Northampton County</u>

Plaintiff also brings a <u>Monell</u> claim against Defendant Northampton County alleging that Northampton County oversees the District Attorney's Office and knows that, because of absolute prosecutorial immunity, an assistant district attorney could present false and unreliable information and be immune from punishment. Plaintiff contends that Northampton County policymakers' failure to "have policies in place that would provide checks and balances of the District Attorney's Office allowed the District Attorney's Office to prosecute Plaintiff based on false and fabricated evidence in violation of Plaintiff's constitutional rights, which opens or has open[ed] the door to not only do so to Plaintiff, but others as well, all of which was known or should have been known to be obvious to the policy makers of Northampton County." (Third Am. Compl. ¶ 31.)

In my May 14, 2021 Memorandum screening the Complaint under 28 U.S.C. § 1915, I dismissed Plaintiff's claim against Northampton County without prejudice. I found that such allegations failed to specify what exactly the custom or policy was that allegedly caused Plaintiff's injuries. Moreover, Plaintiff failed to either identify the relevant municipal decision maker responsible for that policy or allege facts to show a pattern of similar violations by untrained employees, such that the Township can be deemed to have acted with deliberate indifference.

The Third Amended Complaint does not correct any of these deficiencies. The new allegations still set forth only a vague assertion that Northampton County does not have a check on its prosecutors to ensure that they do not use fabricated evidence. Such allegations fail to establish a pattern of similar violations in the past, such that relevant policymakers can be deemed to have acted with deliberate indifference. Accordingly, I will dismiss this claim with prejudice.

####### D. Conclusion as to Motions to Dismiss

In light of the foregoing, I will dismiss all claims in Plaintiff's Third Amended Complaint against Defendants Mazzitelli, Whitehall Township, and Northampton County. Although I remain cognizant that, in a civil rights case, a court must *sua sponte* allow a plaintiff leave to amend a complaint, I need not grant leave to amend where it would be inequitable or futile to do so. Phillips v. Cnty of Allegheny, 515 F.3d 224, 245 (3d Cir. 2008).

Here, leave to amend would be futile. The current iteration of the Complaint represents Plaintiff's fourth attempt to plead his claims. Having failed to set forth a plausible cause of action against Defendants Mazzitelli, Whitehall Township, and Northampton County, I find that any further efforts to do so would not be fruitful.

### V. PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

On October 25, 2021, Plaintiff moved for default judgment against Defendants for failure to timely respond to the Third Amended Complaint. No such default judgment is warranted.

According to the docket, service of the Third Amended Complaint was made on all Defendants on August 13, 2021, making a responsive pleading due by September 3, 2021. On September 1, 2021, Hammer and Colonial Regional Police Department timely filed an Answer with Affirmative Defenses. On September 3, 2021, Mazzitelli and Whitehall Township Police Department timely filed a Motion to Dismiss.

On September 29, 2021, prior to any default motion by Plaintiff, Northampton County submitted a letter indicating that the person who accepted service on behalf of Northampton County was not authorized to do so, resulting in a delay in assigning the case to defense counsel. This letter (a) requested an additional thirty days to investigate the alleged facts and prepare responsive pleading, (b) asserted that there would be no prejudice to Plaintiff, and (c) averred that

16

Northampton County has been acting in good faith. Based on good cause shown, I granted Northampton County an extension of time until October 29, 2021 in which to file a responsive pleading. On October 29, 2021, Northampton County filed the Motion to Dismiss discussed above.

The United States Court of Appeals for the Third Circuit has stressed that it "does not favor entry of defaults or default judgments." U.S. v. $55,518.05 in U.S. Currency, 728 F.2d 192, 194 (3d Cir. 1984). As all Defendants have timely responded to the Third Amended Complaint, there is no basis default.

## VI. PLAINTIFF'S REQUEST FOR APPOINTMENT OF COUNSEL

Indigent civil litigants possess neither a constitutional nor a statutory right to appointed counsel. See Parham v. Johnson, 126 F.3d 454, 456–57 (3d Cir. 1997). Nevertheless, Congress has granted district courts statutory authority to "request" appointed counsel for indigent civil litigants. See 28 U.S.C. § 1915(e)(1) (providing that "[t]he court may request an attorney to represent any person unable to afford counsel"). The United States Court of Appeals for the Third Circuit has interpreted § 1915 as affording district courts "broad discretion" to determine whether appointment of counsel in a civil case would be appropriate. See Tabron v. Grace, 6 F.3d 147, 153 (3d Cir. 1993). The Tabron court found that the decision to appoint counsel may be made at any point in the litigation and may be made by a district court *sua sponte*. Id. at 156.

In Tabron, the Third Circuit developed a list of criteria to aid the district courts in weighing the appointment of counsel for indigent civil litigants. As a threshold matter, a district court must assess whether the claimant's case has some arguable merit in fact and law. Tabron, 6 F.3d at 155; see also Parham, 126 F.3d at 457. If a claimant overcomes this threshold hurdle, the Third Circuit identified a number of factors that a court should consider when assessing a claimant's

request for counsel, including: (1) the plaintiff's ability to present his or her own case; (2) the difficulty of the particular legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue investigation; (4) the plaintiff's capacity to retain counsel on his or her own behalf; (5) the extent to which a case is likely to turn on credibility determinations, and; (6) whether the case will require testimony from expert witnesses. Tabron, 6 F.3d at 155–57. "[T]his list of factors is not exhaustive, but should serve as a guidepost for the district courts." Parham, 126 F.3d at 457 (citing Tabron, 6 F.3d at 155). In addition, the Third Circuit cautioned that courts should exercise care in appointing counsel because volunteer lawyer time is a precious commodity and should not be wasted on frivolous cases. Montgomery v. Pinchak, 294 F.3d 492, 498–99 (3d Cir. 2002).

Consideration of these factors weighs against appointment of counsel at this juncture. The only remaining claims are those against Detective Hammer and Colonial Regional Police Department. Although these Defendants have not challenged the claims against them under a Rule 12(b)(6) standard, my initial review of Plaintiff's various pleadings does not clearly indicate that they have arguable merit in fact and law. Moreover, turning to the Tabron factors, I note that Plaintiff has admirably pursued several claims in this Court and has demonstrated a proficient ability to present his case. The legal issues are straightforward and the degree of factual investigation necessary appears fairly minimal. Finally, this case will likely not require any expert testimony.

Given these factors, I decline to exercise my discretion to appoint counsel at this time. Nonetheless, I recognize that later developments in this case may suggest that appointment of counsel is prudent. Accordingly, following a Rule 16 conference and the commencement of discovery, Plaintiff may, if warranted, renew his motion for appointment of counsel.

An order follows.