IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY MUSTAFA LIFE WILLIAMS, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : CIVIL ACTION NO. 21-CV-0312 |
| | : |
| GARY HAMMER, *et al.*, | : |
| Defendants. | : |

### MEMORANDUM OPINION

Goldberg, J.                                                                                           May 11, 2023

Plaintiff Anthony Mustafa Life Williams brings this action against Defendants Detective Gary Hammer, Detective Mark Mazzitelli, Colonial Regional Police Department, Whitehall Township Police Department, and Northampton County challenging various events surrounding his 2019 arrest and conviction. Defendants Colonial Regional Police Department ("Colonial "PD") and Detective Gary Hammer filed an answer, while the remaining Defendants moved to dismiss. On April 26, 2022, I granted the pending motions and dismissed all claims against Defendants Mazzitelli, Whitehall Township Police Department, and Northampton County.

Following partial discovery, Defendants Hammer and Colonial PD (collectively, "Defendants") filed the current Motion for Judgment on the Pleadings. For the following reasons, I will grant the Motion in part and deny it in part.

**I.   FACTS IN THE THIRD AMENDED COMPLAINT**

The following facts are set forth in the Third Amended Complaint and in documents submitted by Defendants in connection with their Motion.[1]

---

[1]   In deciding a motion under Federal Rule of Civil Procedure, the court must accept all factual allegations in the complaint as true, construe the complaint in the light most favorable to the plaintiff,

On July 29, 2019, Detective Hammer of the Colonial PD filed a criminal complaint and caused Plaintiff to be arrested for burglary and related charges. (Third Am. Compl. ¶ 1.) The affidavit of probable cause attached to the criminal complaint provided that:

> On 01/09/19 the affiant's department received a report from a Lisa Emery who resides at 4080 Jacksonville Rd Bethlehem, Pa. She reported that an unknown person entered her home by breaking the glass in the front door of the house and the suspect took items from the house. The burglary occurred between 0630hrs and 1830hrs on 01/09/19. The neighbor of Emery a Joshua Moratz who resides next to the victim, reported that about 1400 hrs on 01/09/19 he heard a car door close and he looked out the window. He reported that he saw a black vehicle in the victim's driveway. He described the vehicle as a black Dodge Caliber. He stated that he didn't think anything of it because the victim's house was for sale. The home owner reported that stolen from her home was TCL 43" flat screen television with a value of $400.00, an Apple Mac Book Pro computer with a value of $2,000.00 a pair of Bose noise cancelling headphones $300.00 and a jewelry box full of jewelry total [sic] $500.00.
>
> On 01/10/19 the affiant contacted the pawn shop called Buy Sell Trade located on 1125 Hamilton Blvd Allentown and they reported that a person was just in the store and sold them a TCL television and a[n] Apple Mac Book Pro computer for $70.00. The affiant went to the pawnshop and was able to determine through the serial numbers that the items at the pawnshop were the homeowner's items. The pawnshop advised the affiant that they got a copy of the driver's license of the person who sold them the items. The driver's license was that of the defendant. The affiant found looking at the victim's computer, that the defendant did a factory reset of the laptop computer and put himself in as the only contact.
>
> The affiant learned that the defendant was a suspect in a daytime burglary that had occurred in the Borough of Emmaus on 12/28/2018 where a door window was broken to gain entry. The affiant also found that the defendant owns and operates a black Dodge Journey which looks the same as a black Dodge Caliber that was seen in the victim's driveway at the time of the burglary.
>
> The affiant found that the defendant was arrested by the Whitehall Twp Police Department for a daytime burglary that had occurred at that location on 02/04/19. The Affiant contacted Det. Mazzitelli of the Whitehall Twp Police Department. He informed the affiant that he had seized the defendant's phones. He informed me that

---

and determine whether, under any reasonable reading, the plaintiff may be entitled to relief. Atiyeh v. Nat'l Fire Ins. Co. of Hartford, 742 F. Supp. 2d 591, 596 (E.D. Pa. 2010).

>a search warrant was executed on both phones. He found that the defendant would commonly use his phone and take pictures of the items that he stolen [sic] and research the value of his stolen items. Mazzitelli stated that the defendant did that involving the items he had stolen from Whitehall Twp. Mazzitelli also informed the affiant that the defendant was seen in his black Dodge Journey at the burglary scene.
>
>The affiant received a copy of the computer forensic report for the defendant's phones. The affiant found that soon after the burglary at the Emery residence at 4060 Jacksonville Rd the defendant had taken a picture of a 43 inch TCL flat screen television and he researched the value of an Apple MAC Book Computer.
>
>The homeowner advised the affiant that the front door damage that was done by the defendant braking [sic] into the home totaled $900.00.

(Pl.'s Opp'n Mot. to Dismiss, ECF No. 36, Ex. B.)[2]

Based on the affidavit of probable cause, Plaintiff was arrested on July 29, 2019, and charged with burglary, theft by unlawful taking of movable property, receiving stolen property, criminal trespass, and criminal mischief. (Id. at ¶ 2(g); see also Commonwealth v. Williams, CP-48-CR-3017-2019.) At the time of his arrest in Northampton County, Plaintiff had been incarcerated in Lehigh County prison, since February 7, 2019, on similar charges. (Defs.' Mot. Judg. Pldgs, Ex. A.)[3] The Lehigh County

---

[2] As a general rule, a district court reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6) "may not consider matters extraneous to the pleadings" without converting the motion into one for summary judgment. In re Burlington Coat Factory Secs. Litg., 114 F.3d 1410, 1426 (3d Cir. 1997). The rule, however, has three exceptions that permit courts to consider: (1) exhibits attached to the complaint; (2) matters of public record; and/or (3) undisputedly authentic documents integral to or explicitly relied upon in the complaint. Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014). Consistent with these principles, I consider Defendant's Exhibits to the extent they fall into one of those three categories.

The affidavit of probable cause attached as Exhibit B to Plaintiff's Response in Opposition to the Motion to Dismiss and discussed herein is a public document that is explicitly relied upon and paraphrased in the Third Amended Complaint. As such, I may consider this document when ruling on the Motions to Dismiss. See Shelley v. Wilson, 339 F. App'x 136, 137 (3d Cir. 2009) (noting that the district court properly considered criminal complaint and arrest warrant in deciding a motion to dismiss a false arrest claim).

[3] Court dockets may be considered on a motion to dismiss for failure to state a claim because they are matters of public record. Govt. Emps. Ins. Co. v. Nealey, 262 F. Supp. 3d 153, 168 (E.D. Pa. 2017).

Court sentenced Plaintiff to three to seven years in state prison, a sentence which, to date, he continues to serve. (Defs.' Mot. Judg. Pldgs, Ex. A.)

On September 11, 2019, a preliminary hearing was held on the Northampton County charges. Subsequently, Plaintiff filed a habeas corpus motion challenging whether a *prima facie* case existed for the charges against him. At the ensuing habeas hearing on November 9, 2020, Plaintiff identified several inconsistencies in the evidence and Detective Hammer's testimony. Based on the hearing, the Northampton County judge determined that the Commonwealth lacked sufficient evidence to implicate Plaintiff in the crimes and dismissed four of the five charges. As to the fifth charge of receiving stolen property, Plaintiff's attorney conceded that the Commonwealth possessed sufficient evidence against Plaintiff. (Defs.' Mot. Judg. Pldgs, Ex. B, p .4.) On December 9, 2020, the Assistant District Attorney *nolle prossed* that remaining charge for "improper venue due to the dismissal of other charges." (Third Am. Compl. ¶¶ 13–15; Defs.' Mot. Judg. Pldgs., Ex. C.)

## II.   PROCEDURAL HISTORY

On January 15, 2021, Plaintiff filed a complaint setting forth claims under 42 U.S.C. § 1983 and state law against Northampton County, Gary Hammer, Assistant District Attorney Kathrine Kurnas, and Mark Mazzitelli. He filed a first amended complaint on February 3, 2021. I dismissed that complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and granted him leave to file a second amended complaint, which he did on May 7, 2021. I again screened this complaint under 28 U.S.C. § 1915(3)(2)(B)(ii) and dismissed all claims against Defendant Katherine Kurnas with prejudice and all claims against Northampton County to the extent they were based on the conduct of Defendants Hammer, Mazzitelli, and Kurnas. I again granted Plaintiff leave to file an amended complaint, which he did on June 15, 2021.

After Plaintiff's service of the Third Amended Complaint on all Defendants, Colonial PD and Detective Hammer filed an answer with affirmative defenses and Defendants Detective Mark Mazzitelli, Whitehall Township Police Department, and Northampton County filed motions to dismiss pursuant to

4

Federal Rule of Civil Procedure 12(b)(6).  On April 6, 2022, I granted the motions and dismissed all claims in Plaintiff's Third Amended Complaint against Defendants Mazzitelli, Whitehall Township, and Northampton County.

On August 22, 2022, the remaining Defendants, Colonial PD and Detective Hammer, filed the current Motion for Judgment on the Pleadings.

### III.     STANDARD OF REVIEW

"The standard for deciding a motion for judgment on the pleadings filed pursuant to Federal Rule of Civil Procedure 12(c) is not materially different from the standard for deciding a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6)."  Zion v. Nassan, 283 F.R.D. 247, 254 (W.D. Pa. 2012); see Minnesota Lawyers Mut. Ins. Co. v. Ahrens, 432 F. App'x 143, 147 (3d Cir. 2011).  Either motion may be used to seek the dismissal of a complaint based on a plaintiff's "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6); id. at 12(h)(2)(B).  The only difference between the two motions is that a Rule 12(b) motion must be made before a "responsive pleading" is filed, whereas a Rule 12(c) motion can be made "[a]fter the pleadings are closed."  Fed. R. Civ. P. 12(b) & 12(c); Atiyeh v. Nat'l Fire Ins. Co. of Hartford, 742 F. Supp. 2d 591, 595 (E.D. Pa. 2010).

A motion for judgment on the pleadings for failure to state a claim is analyzed under the same standards that apply to a Rule 12(b)(6) motion.  Wolfington v. Reconstructive Orthopaedic Assocs. II PC, 935 F.3d 187, 195 (3d Cir. 2019).  Under Federal Rule of Civil Procedure 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotations omitted).  "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and only a complaint that states a

5

plausible claim for relief survives a motion to dismiss. Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct. Id. at 679.

The United States Court of Appeals for the Third Circuit has detailed a three-step process to determine whether a complaint meets the pleadings standard. Bistrian v. Levi, 696 F.3d 352 (3d Cir. 2014). First, the court outlines the elements a plaintiff must plead to state a claim for relief. Id. at 365. Next, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." Id. Finally, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'" Id. (quoting Iqbal, 556 U.S. at 679). The last step is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Iqbal, 556 U.S. at 679).

A *pro se* complaint should be "held to less stringent standards than formal pleadings drafted by lawyers." U.S. ex rel. Walker v. Fayette Cty., Pa., 599 F.2d 573, 575 (3d Cir. 1979), (citing Haines v. Kerner, 404 U.S. 519, 521 (1972)). The court must construe the facts stated in the complaint liberally in favor of the plaintiff. Haines, 404 U.S. at 520. "Yet there are limits to our procedural flexibility," and "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013). Thus, even a *pro se* complaint must conform with the requirements of Rule 8(a) of the Federal Rules of Civil Procedure, which "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" or "naked assertions" that are devoid of "factual enhancement." Iqbal, 556 U.S. at 678 (internal quotations omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' will not do." Id.

## IV. DISCUSSION

Plaintiff sets forth multiple claims against Detective Hammer and Colonial PD including (1) fabrication of evidence; (2) Fourth Amendment claims of false arrest, false imprisonment, and malicious prosecution; (3) state law claims of false arrest, false imprisonment, and malicious prosecution; (4) civil conspiracy; and (5) a Monell claim against Colonial PD.

### A. Fabrication of Evidence

To plead a fabrication-of-evidence claim, a plaintiff must allege that "there is a reasonable likelihood that, absent that fabricated evidence, the defendant would not have been criminally charged." Black v. Montgomery Cty., 835 F.3d 358, 371 (3d Cir. 2016). To satisfy the element of "fabricated evidence," "testimony that is incorrect or simply disputed should not be treated as fabricated merely because it turns out to have been wrong." Halsey v. Pfeiffer, 750 F.3d 273, 295 (3d Cir. 2014). Instead, there must be persuasive evidence that the fabricated evidence's proponents knew the evidence was incorrect or offered it in bad faith. Id. At the motion to dismiss stage, a plaintiff must plead sufficient facts to establish that the defendant officers either knowingly stated deliberate falsehoods or acted with reckless disregard for the truth. Basile v. Twp. of Smith, 752 F. Supp. 2d 643, 657–58 (W.D. Pa. 2010). To meet the "reasonable likelihood" standard, the plaintiff must set forth a "meaningful connection" between the due process injury and the use of fabricated evidence. Black, 835 F.3d at 372. The plaintiff must also establish "that the fabricated evidence 'was so significant that it could have affected the outcome of the criminal case.'" Id. (quoting Halsey v. Pfeiffer, 750 F.3d 273, 294 (3d Cir. 2014)).

The Third Amended Complaint alleges that Detective Hammer made the following omissions or misstatements in the affidavit in support of the criminal complaint:

- Detective Hammer omitted that the pawn shop gave him a piece of paper with Plaintiff's license and phone number, not a receipt that Plaintiff sold them any items.

- Detective Hammer misstated the facts surrounding contacting the pawn shop. Plaintiff alleges that Hammer contacted the pawn shop early in the morning while on the lookout for the stolen items. The pawn shop received the stolen property later in the day and, knowing it was stolen, called Hammer indicating that they had the items, which he came to retrieve the next day.

- Detective Hammer claimed that Plaintiff reset the stolen computer and put his name and contact information in that computer but had no proof to back up that statement.

- Detective Hammer stated that Plaintiff owned the same type of car that was seen at the burglary scene and that Plaintiff was a suspect in a previous burglary. Yet, Hammer knew that Plaintiff had been charged six days before with receiving stolen property, not burglary, and that the charges were dismissed on September 2019.

- Plaintiff owned a black Dodge Journey, not a Dodge Caliber as was reported by a witness to the January 2019 burglary. Detective Hammer falsely averred that Plaintiff was seen in his black Dodge Journey at the Whitehall Township crime scene.

- Detective Hammer falsely averred that Plaintiff would commonly use his phone to take pictures of items that he would steal and research the value of them.

Plaintiff further alleges that Detective Hammer knew these allegations were false. (Id. ¶¶ 4–9, 11–12.)

Defendants seek dismissal of this claim on two grounds. First, they contend that because Plaintiff describes the fabricated evidence claim using words like "omitted" and "misstated" with respect to Detective Hammer's conduct, such alleged misstatements "do not rise to the level of conduct to support a fabrication of evidence claim." (Defs.' Mot. Judg. Pldgs 6.) I disagree. Reading the allegations in the light most favorable to Plaintiff, as I must do at this stage of the litigation, Plaintiff adequately pleads that the affidavit contained affirmative misstatements, which Detective Hammer knew to be false. Such allegations state a plausible claim for relief.

Second, Defendants contend that the state court's denial of habeas relief with respect to the Theft by Receiving Stolen Property Charge constitutes a judicial finding that *prima facie* evidence existed to support the charge. As such, Defendants urge that Plaintiff cannot plausibly allege that, absent the fabricated evidence, there was no reasonable likelihood that he would have been charged. Again, I disagree.

At the habeas proceeding, Plaintiff's counsel did not challenge the sufficiency of the Commonwealth's evidence for the receiving stolen property charge. Given that concession, the state court made no affirmative judicial finding as to the receiving stolen property charge; rather it found only that the Commonwealth lacked sufficient evidence to support any of the remaining charges. (Defs.'

8

Mot. Judg. Pldgs. Ex. B, pp. 4, 8.) Subsequently, the prosecutor dismissed the receiving stolen property charge based on "improper venue due to the dismissal of other charges." (Defs.' Mot. Judg. Pldgs., Ex. C.) Given these allegations and evidence, Plaintiff could plausibly establish a reasonable likelihood that, absent that fabricated evidence giving rise to the other charges, he would not have been charged with the receiving stolen property charge. Accordingly, I decline to dismiss this claim.

### B. Fourth Amendment False Arrest and Malicious Prosecution Claims

Plaintiff also brings claims against Defendants for false arrest and malicious prosecution under the Fourth Amendment.

In order to plead a Fourth Amendment false arrest claim, a plaintiff must allege facts showing that (1) there was an arrest; and (2) that the arrest was made without probable cause. James v. City of Wilkes-Barre, 700 F.3d 675, 680 (3d Cir. 2012). In addition, there must be some showing of a seizure, *i.e.*, when the officer "has in some way restrained the liberty of a citizen." Id.

To plead a Fourth Amendment malicious prosecution claim, a plaintiff must set forth facts that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. Johnson v. Knorr, 477 F.3d 75, 81–82 (3d Cir. 2007).

Common to both claims is the element of a deprivation of liberty. Where an individual was already incarcerated on other charges at the time of the challenged arrest or prosecution, that individual is not deprived of his liberty "as a consequence of" the challenged actions. Curry v. Yachera, 835 F.3d 373, 380 (3d Cir. 2016); see also Gray v. Wittman, 839 F. App'x 669, 671 (3d Cir. 2021) ("[Plaintiff] suffered no deprivation of liberty; he was already incarcerated and would have been detained on the other counts of conviction in any event."); United States v. Johnson, 703 F.3d 464, 470 (8th Cir. 2013) ("Johnson is already incarcerated. His liberty is already deprived . . . . No new deprivation of liberty

9

can be visited upon him . . . ." (citation omitted)); Gravely v. Madden, 142 F.3d 345, 348 (6th Cir. 1998) ("The Fourth Amendment is not triggered anew . . . [when a person] has already been 'seized'").

Here, at the time of the July 29, 2019 arrest and subsequent preliminary hearing in Northampton County, Plaintiff was already incarcerated in Lehigh County prison on separate charges. He had been in custody in Lehigh County since February 7, 2019, and remains in custody to date. Accordingly, he faced no new deprivation of liberty when arrested in Northampton County. Although Plaintiff contends that, as a result of the Northampton County charges, he faced a higher bail amount and had to be transported to Northampton County for trial proceedings, such burdens do not constitute a deprivation of liberty "as a consequence" of the Northampton County charges that triggers the Fourth Amendment anew. Accordingly, the Fourth Amendment false arrest and malicious prosecution claims must be dismissed.[4]

### C. False Imprisonment Claims (State and Federal)

Defendants next seek dismissal of Plaintiff's false imprisonment claim under both state and federal law. The elements of false imprisonment under state law are (1) the detention of another person, and (2) the unlawfulness of such detention. Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994). An arrest based upon probable cause would be justified, regardless of whether the individual arrested was guilty or not. Id. (citing Fagan v. Pittsburgh Terminal Coal Corporation, 149 A. 159 (Pa. 1930). Similarly, a federal false imprisonment claim may be grounded on a "detention pursuant to [an] arrest" made without probable cause." Watson v. Witmer, 183 F. Supp. 3d 607, 612 (M.D. Pa. 2016) (quoting Groman v. Twp. of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995)).

---

[4] Notably, although Defendants do not seek dismissal of Plaintiff's malicious prosecution claim, I find it important to explicitly note that this claim should not be dismissed. "The requirements to prove a Pennsylvania state law cause of action for malicious prosecution are almost identical to the federal counterpart, except that a plaintiff need not prove a deprivation of liberty consistent with the concept of seizure." Wilson v. Dewees, 977 F. Supp. 2d 449, 457 (E.D. Pa. 2013); Luck v. Mount Airy No. 1, LLC, 901 F. Supp. 2d 547, 556 n.3 (M.D. Pa. 2012).

As noted above, Plaintiff cannot establish that he suffered any unlawful detention pursuant to a false arrest since he was already incarcerated in Lehigh County on other charges at the time that Detective Hammer effectuated his arrest in Northampton County.  As such, I will dismiss these claims.

**D.      Civil Conspiracy**

Plaintiff alleges that Detective Hammer engaged in an unlawful civil conspiracy with previously-dismissed Defendant Detective Mazzitelli.  Defendants have moved for judgment on the pleadings on that claim.

In order to plead a civil conspiracy under section 1983, a plaintiff must allege facts that "demonstrate (1) an agreement between two or more conspirators (2) to deprive the plaintiff of a constitutional right, (3) under color of state law." Kist v. Fatula, No. 2006-cv-67, 2007 WL 2404721, at *8 (W.D. Pa. Aug. 17, 2017) (quoting Glass v. City of Philadelphia, 455 F. Supp. 2d 302, 357 (E.D. Pa. 2006)).  "In order to properly plead the existence of an agreement '[t]he plaintiff must make specific factual allegations of combination . . . or understanding among all or any of the defendants to plot, plan, or conspire to carry out the alleged chain of events.'" Id. (quoting Hammond v. Creative Fin. Planning, 800 F. Supp. 1244, 1250 (E.D. Pa. 1999)).

As I noted in dismissing this same claim against Detective Mazzitelli, the Third Amended Complaint contains no allegations of any agreement between the two Detectives.  Plaintiff asserts only that Detective Hammer reached out to Detective Mazzitelli about the results of his investigation of a different burglary and found that some of those facts matched the facts of his own investigation into the January 2019 burglary.  Plaintiff's speculative conclusions that Detectives Hammer and Mazzitelli must have conspired to make it seem that the crimes in Lehigh County and Northampton County were the same is insufficient to plausibly plead an agreement between the two officers to deprive Plaintiff of his constitutional rights.  Accordingly, I will dismiss this claim as against Detective Hammer.

11

E.  *Monell* Claims

Finally, Defendants challenge the Section 1983 claim against Defendant Colonial PD. As I noted in my April 26, 2022 Memorandum Opinion (ECF No. 56), in order to recover against a municipality or municipal corporation under Section 1983, a plaintiff must plead that the entity itself caused an injury through the implementation of a policy, practice or custom. Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 694 (1978); Natale v. Camden Cty Corr. Facility, 318 F.3d 575 (3d Cir. 2003). Section 1983 imposes liability on a municipality where, "through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." Bd. of Cty. Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 404 (1997) (emphasis in original). The Third Circuit has recognized liability for local governments in three circumstances:

> First, the municipality will be liable if its employee acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity; . . . second, liability will attach when the individual has policy making authority rendering his or her behavior an act of official government policy; . . . third, the municipality will be liable if an official with authority has ratified the unconstitutional actions of a subordinate, rendering such behavior official for liability purposes.

McGreevy v. Stroup, 413 F.3d 359, 367 (3d Cir. 2005) (internal citations omitted).

A plaintiff must prove that the action in question, conducted pursuant to official municipal policy, caused his/her injury. Connick v. Thompson, 563 U.S. 51, 60–61 (2011). When a plaintiff alleges that a policy "concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." Thomas v. Cumberland Cty., 749 F.3d 217, 222 (3d Cir. 2014) (citations omitted). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Connick, 563 U.S. at 61 (citations omitted).

The Third Circuit has emphasized that, "[t]o satisfy the pleading standard, [a plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was." McTernan v. City of York, Pa., 564 F.3d 636, 658 (3d Cir. 2009). A simple allegation that the plaintiff's rights were violated "due to the City's policy of ignoring First Amendment right[s]," or something similar, was insufficient. Id. "Equally fatal," according to the Third Circuit, is a plaintiff's failure to allege conduct by a municipal decisionmaker. Id. Courts within the Third Circuit have repeatedly dismissed Monell claims premised on such bare supporting allegations. See, e.g., Langford v. Gloucester Twp. Police Dept., No. 16-cv-1023, 2016 WL 7130912, at *6 (D.N.J. Dec. 7, 2016) (dismissing Monell claim where plaintiff alleged only that the township and police department "had policies and procedures of relying on uncorroborated statements, not verifying facts, willfully disregarding the constitutional rights of New Jersey citizens, arresting citizens without probable cause, and failing to investigate cases," because such allegations failed to identify any particular official policies and failed to mention previous, similar constitutional violations to show a custom."); Jacobs v. Palmer, No. 14-cv-5797, 2015 WL 1033294, at *5–6 (E.D. Pa. Mar. 10, 2015) (finding that allegations regarding County's failure to train, supervise, discipline, or terminate officers regarding past similar violations of constitutional rights were insufficient to state a Monell claim because the plaintiffs did not specify what exactly the custom or policy was that allegedly caused their injuries, did not identify the relevant municipal decision maker responsible for that policy, and have not alleged facts to show a pattern of similar violations by untrained employees).

The Third Amended Complaint is similarly deficient in pleading a Monell claim against Colonial PD. Plaintiff alleges that Colonial PD "failed to put in place and allow it to be public knowledge a procedure which would allow citizens of each area [it] cover[s] to report the violation of constitutional rights and the defendants review and discipline said violations. As this training would or could have forced [Detective Hammer] and others to not file charges not warranted. But [Colonial Regional Police Department] [does not have] said policy in place." (Third Am. Compl. ¶¶ 20–22, 24.) Plaintiff further asserts that Colonial PD has "failed to supervise, train and discipline and . . . said failure amounts to

13

deliberate indifference to the constitutional rights of the plaintiff." (Id. at p.18.) Nothing in these allegation identifies (a) a pattern of similar violations, (b) knowledge by a municipal policymaker, or (c) a specific failure that led to the violations of Plaintiff's constitutional rights. Accordingly, I will dismiss the Section 1983 claim against Defendant Colonial Regional Police Department.

## V.     CONCLUSION

In light of the foregoing, I will grant Defendants Hammer and Colonial PD's Motion for Judgment on the Pleadings as to Plaintiff's (a) federal false arrest, false imprisonment, and malicious prosecution claims; (b) state false imprisonment claim; (c) civil conspiracy claim; and (d) Monell claims. Defendants' Motion is denied as to the fabrication of evidence claim. With this decision, the sole remaining claims in this case are the fabrication of evidence and state malicious prosecution claims against Detective Hammer.