IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY MUSTAFA LIFE WILLIAMS, | : :  : | |
| | : | CIVIL ACTION |
| **Plaintiff,** | : : | |
| v. | : : | NO. 21-CV-0312 |
| GARY HAMMER, *et al.*, | : | |
| **Defendants.** | : | |

**MEMORANDUM OPINION**

Goldberg, J.                                                                                           May 14, 2024

Following a 2019 arrest for burglary, Plaintiff Anthony Mustafa Life Williams brought this *pro se* civil rights action against Defendants Detective Gary Hammer, Detective Mark Mazzitelli, Colonial Regional Police Department, Whitehall Township Police Department, and Northampton County. After several rounds of motions, all claims against all Defendants were dismissed except a Fourth Amendment fabrication of evidence claim and a state malicious prosecution claim, both against Detective Hammer.

Now that discovery is complete, Detective Hammer seeks summary judgment on the remaining claims. For the following reasons, I will grant his Motion and enter judgment in favor of Detective Hammer and against Plaintiff.

**I.      STATEMENT OF FACTS**

The following facts are derived from the evidence submitted by the parties and are undisputed unless noted. Where there is conflicting evidence about a particular fact, Federal Rule of Civil Procedure 56 requires that I view such evidence in the light most favorable to Plaintiff.[1]

---

[1] Detective Hammer submitted a Statement of Undisputed Facts with supporting evidence. Plaintiff, acting *pro se*, has not responded to that Statement but has addressed the facts in his Response, to which he attaches several exhibits. For the sake of comprehensiveness, I will cite the supporting exhibit for each factual statement.

### A. The Bethlehem Burglary and Related Incidents

On January 10, 2019, Detective Hammer investigated a burglary at 4060 Jacksonville Road, Hanover Township, Pennsylvania that had occurred on the previous day, January 9, 2019 (the "Bethlehem Burglary"). (Def.'s Ex. C, N.T. 5:8–19.) The victim reported that someone broke into her home and took a television, a laptop computer, jewelry, and a jewelry box. (Id. at 6:21–7:2.) Based on that information, and as a matter of "regular procedure," Detective Hammer contacted local pawnshops, specifically the Buy Sell and Trade Pawnshop, and inquired about the stolen items. Although Buy Sell and Trade initially had no information on the stolen items, later that evening, someone from the store contacted the police department and reported that a gentleman had come in and sold them the television and laptop computer that Detective Hammer was looking for. (Id. at 8:22–15.) Plaintiff admitted that he had no evidence that Detective Hammer did not contact the pawnshop. (Def.'s Ex. A, Dep. of Anthony Mustafa Life Williams ("Williams's Dep.") 28:22–29:11.)

On January 11, 2019, Detective Hammer recovered from Buy Sell and Trade Pawnshop the television and laptop computer that had been reported stolen in the Bethlehem Burglary. (Def.'s Ex. C, N.T. 9:18–10:1.) The pawnshop also told Detective Hammer that it had taken the driver's license of the person who sold them the items and then provided a copy of the Plaintiff's driver's license as proof that Plaintiff was the person that sold them the stolen items. (Id. at 10:2–24.) Plaintiff again had no evidence to contradict that Detective Hammer received a piece of paper with a copy of his driver's license on it from Buy Sell and Trade Pawnshop on January 10, 2019. (Williams's Dep. 32:1–5.)

Detective Hammer reviewed the stolen laptop and observed that the hard drive had been wiped clean. Plaintiff's name and telephone number were listed as the only contact in the computer. (Def.'s Ex. C, N.T. 11:11–18.) Plaintiff admitted that he had no evidence to dispute either that the MacBook taken from the Bethlehem Burglary was recovered at Buy Sell and Trade Pawnshop or that Detective Hammer observed Mr. Williams's contact information on the MacBook. (Williams's Dep. 29:7–31:24.)

In December 2018, January 2019, and February 2019, Plaintiff owned a 2010 black Dodge Journey. (Williams's Dep. 25:13–18.) A neighbor of the victim in the Bethlehem Burglary reported hearing glass break on the night of the crime and observed a black Dodge Caliber in the victim's driveway but did not think anything of it because the house was listed for sale, and he assumed it was a realtor. (Def.'s Ex. C, N.T. 7:19–8:8.)

Another burglary had previously occurred on December 28, 2018, at 1821 West Miner Street, Emmaus, Pennsylvania (the "Emmaus Burglary"). The Emmaus Police Department Incident Report Number EM-18-07009 listed Plaintiff as a suspect in that robbery. (Def.'s Ex. D.) Plaintiff had no evidence to contradict that fact. (Williams's Dep. 20:16–20.)

In connection with a third burglary that occurred on February 4, 2019, at 2118 S. Ruch Street in Whitehall Township, Pennsylvania (the "Whitehall Burglary"), Plaintiff was interviewed and admitted to being present at the scene. Plaintiff explained that he was the driver of his 2010 Black Dodge Journey, along with a co-conspirator as a passenger. (Def.'s Ex. E., Decl. of Deputy Chief Mark Mazzitelli ("Mazzitelli Decl.") ¶¶ 4– 5.) Plaintiff further admitted that, on February 6, 2019, he attempted to sell an Apple MacBook Pro, stolen during the Whitehall Burglary, at a Dunkin Donuts in Lehigh County and also placed advertisements for the MacBook on Craigslist and Offer Up. (Williams's Dep. 21:7–21.)

Deputy Chief Mazzitelli of Whitehall Township assisted Detective Hammer during his investigation of the Bethlehem Burglary. (Mazzitelli Decl. ¶ 11.) He informed Detective Hammer of Plaintiff's admissions and indicated that Plaintiff's cellular phones had been seized during the Whitehall Burglary and submitted for digital forensic analysis. Based on that analysis, he concluded that Plaintiff would commonly use his cellular phone to take pictures of stolen items and research the value of those items. (Id. ¶¶ 11–16.) Deputy Chief Mazzitelli also showed Detective Hammer a copy of the digital forensic report, which indicated that soon after the Bethlehem Burglary, pictures were taken of a flat screen television and an Apple laptop, and that an internet search related to the value of

an Apple MacBook computer was performed on the phone. (Def.'s Ex. E ¶ 16; see also Def.'s Ex. F, N.T. 20:1–18.)

### B. The Criminal Complaint Filed by Detective Hammer

On July 29, 2019, Detective Hammer filed a criminal complaint resulting in Plaintiff's arrest for burglary and related charges in connection with the Bethlehem Burglary. (Third Am. Compl. ¶ 1.) The affidavit of probable cause attached to the criminal complaint provided that:

> On 01/09/19 the affiant's department received a report from a Lisa Emery who resides at 4080 Jacksonville Rd Bethlehem, Pa. She reported that an unknown person entered her home by breaking the glass in the front door of the house and the suspect took items from the house. The burglary occurred between 0630hrs and 1830hrs on 01/09/19. The neighbor of Emery a Joshua Moratz who resides next to the victim, reported that about 1400 hrs on 01/09/19 he heard a car door close and he looked out the window. He reported that he saw a black vehicle in the victim's driveway. He described the vehicle as a black Dodge Caliber. He stated that he didn't think anything of it because the victim's house was for sale. The home owner reported that stolen from her home was TCL 43" flat screen television with a value of $400.00, an Apple Mac Book Pro computer with a value of $2,000.00 a pair of Bose noise cancelling headphones $300.00 and a jewelry box full of jewelry total [sic] $500.00.
>
> On 01/10/19 the affiant contacted the pawn shop called Buy Sell Trade located on 1125 Hamilton Blvd Allentown and they reported that a person was just in the store and sold them a TCL television and a[n] Apple Mac Book Pro computer for $70.00. The affiant went to the pawnshop and was able to determine through the serial numbers that the items at the pawnshop were the homeowner's items. The pawnshop advised the affiant that they got a copy of the driver's license of the person who sold them the items. The driver's license was that of the defendant. The affiant found looking at the victim's computer, that the defendant did a factory reset of the laptop computer and put himself in as the only contact.
>
> The affiant learned that the defendant was a suspect in a daytime burglary that had occurred in the Borough of Emmaus on 12/28/2018 where a door window was broken to gain entry. The affiant also found that the defendant owns and operates a black Dodge Journey which looks the same as a black Dodge Caliber that was seen in the victim's driveway at the time of the burglary.
>
> The affiant found that the defendant was arrested by the Whitehall Twp Police Department for a daytime burglary that had

    occurred at that location on 02/04/19. The Affiant contacted Det. Mazzitelli of the Whitehall Twp Police Department. He informed the affiant that he had seized the defendant's phones. He informed me that a search warrant was executed on both phones. He found that the defendant would commonly use his phone and take pictures of the items that he stolen [sic] and research the value of his stolen items. Mazzitelli stated that the defendant did that involving the items he had stolen from Whitehall Twp. Mazzitelli also informed the affiant that the defendant was seen in his black Dodge Journey at the burglary scene.

    The affiant received a copy of the computer forensic report for the defendant's phones. The affiant found that soon after the burglary at the Emery residence at 4060 Jacksonville Rd the defendant had taken a picture of a 43 inch TCL flat screen television and he researched the value of an Apple MAC Book Computer.

    The homeowner advised the affiant that the front door damage that was done by the defendant braking [sic] into the home totaled $900.00.

(Def.'s Ex. B.)

Based on the affidavit of probable cause, Plaintiff was arrested on July 29, 2019, and charged with burglary, theft by unlawful taking of movable property, receiving stolen property, criminal trespass, and criminal mischief. Commonwealth v. Williams, CP-48-CR-3017-2019. Subsequently, Plaintiff filed a habeas corpus motion challenging whether a prima facie case existed for the charges against him. At the ensuing habeas hearing on November 9, 2020, Plaintiff identified several inconsistencies in the evidence and Detective Hammer's testimony. Based on the evidence presented at that hearing, the judge determined that the Commonwealth lacked sufficient evidence to implicate Plaintiff in the crimes and dismissed four of the five charges. As to the fifth charge of receiving stolen property, Plaintiff's attorney conceded that the Commonwealth possessed sufficient evidence against Plaintiff. (ECF No. 88-3.) On December 9, 2020, the Assistant District Attorney *nolle prossed* that remaining charge for "improper venue due to the dismissal of other charges." (ECF No. 88-4.)

## II. PROCEDURAL HISTORY

On January 15, 2021, Plaintiff filed a complaint setting forth claims under 42 U.S.C. § 1983 and state law against Northampton County, Gary Hammer, Assistant District Attorney Kathrine Kurnas, and Mark Mazzitelli. He filed a first amended complaint on February 3, 2021. I dismissed that complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and granted him leave to file a second amended complaint, which he did on May 7, 2021. I also screened this complaint under 28 U.S.C. § 1915(3)(2)(B)(ii) and dismissed all claims against Defendant Katherine Kurnas with prejudice and all claims against Northampton County to the extent they were based on the conduct of Defendants Hammer, Mazzitelli, and Kurnas. I again granted Plaintiff leave to file an amended complaint, which he did on June 15, 2021.

After Plaintiff's service of the Third Amended Complaint on all Defendants, Colonial PD and Detective Hammer filed an answer with affirmative defenses and Defendants Detective Mark Mazzitelli, Whitehall Township Police Department, and Northampton County filed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). On April 6, 2022, I granted the motions and dismissed all claims in Plaintiff's Third Amended Complaint against Defendants Mazzitelli, Whitehall Township, and Northampton County.

On August 22, 2022, the remaining Defendants, Colonial PD and Detective Hammer, filed a motion for judgment on the pleadings, which I granted as to all remaining claims except for (a) the Fourth Amendment fabrication of evidence claim against Detective Hammer, and (b) the state law malicious prosecution claim against Detective Hammer.

Following discovery, Detective Hammer filed the current Motion for Summary Judgment.

## III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 states, in pertinent part:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary

> judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a). "Through summary adjudication, the court may dispose of those claims that do not present a 'genuine dispute as to any material fact' and for which a jury trial would be an empty and unnecessary formality." Capitol Presort Servs., LLC v. XL Health Corp., 175 F. Supp. 3d 430, 433 (M.D. Pa. 2016). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. Id.

The initial burden is on the moving party to adduce evidence illustrating a lack of genuine, triable issues. Hugh v. Butler Cnty. Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005). Once the moving party satisfies its burden, the non-moving party must, in rebuttal, present sufficient evidence of a genuine issue, in rebuttal. Santini v. Fuentes, 795 F.3d 410, 416 (3d Cir. 2015). The court must then resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. Saldana v. Kmart Corp, 260 F.3d 228, 232 (3d Cir. 2001). Summary judgment is appropriate if the non-moving party provides merely colorable, conclusory or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts. Id. at 252. Unsubstantiated arguments made in briefs are not considered evidence of asserted facts. Versarge v. Twp. of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993). Moreover, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 241 (3d Cir. 1985) (citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).

"[O]n a motion for summary judgment, a *pro se* plaintiff is not relieved of his obligation under Rule 56 to point to competent evidence in the record that is capable of refuting a defendant's motion for summary judgment." Edwards v. Rice-Smith, 606 F. Supp. 3d 151, 154 (E.D. Pa. 2022) (quoting Dawson v. Cook, 238 F. Supp. 3d 712, 717 (E.D. Pa. 2017)). "The party opposing summary judgment, whether pro se or counseled, must present evidence, through affidavits, depositions, or admissions on file, to show that there is a genuine issue for trial." Id. (quoting Watson v. Philadelphia Hous. Auth., 629 F. Supp. 2d 481, 485 (E.D. Pa. 2009)).

IV.     **DISCUSSION**

  A. **Fabrication of Evidence Claim**

To establish a fabrication-of-evidence under the Fourteenth Amendment, a plaintiff must allege that "there is a reasonable likelihood that, absent that fabricated evidence, the defendant would not have been criminally charged." Black v. Montgomery Cty., 835 F.3d 358, 371 (3d Cir. 2016). To satisfy the element of "fabricated evidence," "testimony that is incorrect or simply disputed should not be treated as fabricated merely because it turns out to have been wrong." Halsey v. Pfeiffer, 750 F.3d 273, 295 (3d Cir. 2014). Instead, there must be persuasive evidence that the fabricated evidence's proponents knew the evidence was incorrect or offered it in bad faith. Id. The United States Court of Appeals for the Third Circuit has emphasized that the standard to demonstrate that evidence is fabricated is a "notable bar," and "it will be an unusual case in which a police officer cannot obtain a summary judgment in a civil action charging him with having fabricated evidence used in an earlier criminal case." Black, 835 F.3d 372 (quoting Halsey, 750 F.3d at 295). As such, a mere "he said, she said" dispute does not rise to the level of fabricated evidence, otherwise it would "undermine the 'unusual case' standard dictated by our precedent, which directs concern to cases in which there is actual fabrication." Boseman v. Upper Providence Twp., 680 F. App'x 65, 70 (3d Cir. 2017).

To meet the "reasonable likelihood" standard, the plaintiff must set forth a "meaningful connection" between the due process injury and the use of fabricated evidence. Black, 835 F.3d at

372. A fabricated evidence claim "should not survive summary judgment" unless the plaintiff can establish "that the fabricated evidence 'was so significant that it could have affected the outcome of the criminal case.'" Id. (quoting Halsey v. Pfeiffer, 750 F.3d 273, 294 (3d Cir. 2014)).

At the motion for judgment on the pleadings stage, I found that Plaintiff had identified sufficient omissions or misstatements in Detective Hammer's probable cause affidavit which, taken as true, could rise to the level of "fabricated evidence." At the summary judgment stage, however, Detective Hammer has pointed to undisputed evidence to substantiate each of the challenged statements in that affidavit. Plaintiff has neither produced contrary evidence to create a genuine issue of material fact nor shown that any of the alleged factual inaccuracies had a meaningful connection with the institution of charges against him.[2]

First, Plaintiff claimed that Detective Hammer, in his affidavit, omitted that the pawn shop gave him a piece of paper with Plaintiff's license and phone number, not a receipt that Plaintiff sold them any items. The affidavit, however, actually stated that Detective Hammer contacted the pawn shop and "they reported that a person was just in the store and sold them a TCL television and a[n] Apple Mac Book Pro computer for $70.00" and "advised the affiant that they got a copy of the driver's license of the person who sold them the items." (Def.'s Ex. B.) The undisputed facts fully substantiate this statement, and Plaintiff expressly admitted that he has no contrary evidence.

Second, Plaintiff alleges that the affidavit falsely states that Detective Hammer contacted the pawn shop on January 10, 2019, and was told that a person had just been in and sold them the reported stolen items, when, in actuality, the timeline of events was different. The undisputed evidence, however, establishes that the affidavit simply recounted an abbreviated version of the facts. According to that evidence, Detective Hammer contacted the pawnshop on January 10, 2019 to inquire about the stolen items, but the pawnshop initially had no information on them. Later that same day, someone

---

[2] All of the evidentiary citations for the following facts are set forth in the "Statement of Facts" section above.

from the pawnshop contacted the police department and reported that a gentleman had come in and sold them the television and laptop computer that Detective Hammer was looking for. Accordingly, the affidavit was factually correct but simply eliminated the details of back-and-forth phone calls between the pawn shop and the police. Such omission does not, as a matter of law, constitute "fabricated" evidence.

Third, Plaintiff contends that Detective Hammer claimed that Plaintiff reset the stolen computer and put his name and contact information in that computer but had no proof to back up that statement. The undisputed evidence, however, reveals that when Detective Hammer reviewed the stolen laptop, he observed that the hard drive had been wiped clean, and that Plaintiff's name and telephone number were listed as the only contact in the computer. Plaintiff admitted that he had no evidence to dispute that Detective Hammer found Mr. Williams's contact information on the MacBook but simply disputed that he had put his contact information there. Such a "he said, she said" dispute does not rise to the level of fabricated evidence. Boseman, 680 F. App'x at 70. Moreover, it was reasonable for Detective Hammer, in his position as a trained detective, to infer from the wiped hard drive and presence of Plaintiff's own contact information was that Plaintiff placed it there himself to hide that the laptop had been stolen.

Fourth, Plaintiff asserts that Detective Hammer misrepresented that Plaintiff was a suspect in a previous burglary (the Emmaus Burglary), even though Plaintiff had been charged with receiving stolen property, not burglary. The Emmaus Police Department Incident Report Form, however, explicitly reported the incident as a "burglary" and listed Plaintiff as a suspect. (Def.'s Ex. D.) The mere fact that Plaintiff was later charged only with receiving stolen property does not undermine Detective Hammer's statement that Plaintiff was suspected in a burglary.

Fifth, Plaintiff contends that Detective Hammer improperly averred that Williams owned the same type of car that was seen at the Bethlehem Burglary. But the undisputed evidence reveals no discrepancy. As noted above, a neighbor of the Bethlehem Burglary reported hearing glass break and

10

seeing a black Dodge Caliber in the victim's driveway, which the neighbor assumed belonged to a realtor since the house was up for sale. Thereafter, in the affidavit, Detective Hammer stated that "defendant owns and operates a black Dodge Journey which looks the same as a black Dodge Caliber that was seen in the victim's driveway at the time of the burglary." (Def.'s Ex. B.) Plaintiff has produced no evidence to allow any inference that this statement was either untrue or grossly misleading.

Sixth, Plaintiff challenges the veracity of Detective Hammer's statement that Plaintiff was seen in his Black Dodge Journey at the Whitehall Township crime scene. According to the undisputed evidence, however, Plaintiff, during an investigative interview, admitted to being present at the scene at 2118 S. Ruch Street in Whitehall Township, Pennsylvania (the "Whitehall Burglary"). Plaintiff stated that he was the driver of his 2010 Black Dodge Journey, along with a co-conspirator as a passenger, and that he attempted to sell an Apple MacBook Pro that had been stolen during that burglary. Detective Hammer discovered that information from a conversation with Deputy Chief Mazzitelli of Whitehall Township. Based on that evidence, the affidavit properly reported that "Mazzitelli also informed the affiant that the defendant was seen in his black Dodge Journey at the [Whitehall] burglary scene." (Id.)

Seventh, Plaintiff claims that Detective Hammer falsely averred that Plaintiff would commonly use his phone to take pictures of items that he would steal and research the value of them. Again, however, the undisputed evidence reveals no fabrication or material omission. The affidavit stated that Deputy Chief Mazzitelli concluded, based on his own investigation, that Plaintiff commonly used his phone to take pictures and research the value of stolen items. According to the evidence, Mazzitelli subsequently informed Detective Hammer that Plaintiff's cellular phones were seized during the Whitehall Burglary and submitted for digital forensic analysis. That analysis showed not only pictures of and research regarding items stolen from the Whitehall Burglary, but also pictures of items that had

11

been taken during the Bethlehem Burglary. Accordingly, Detective Hammer had ample basis for inclusion of this statement in the affidavit.

Finally, in his Response Brief, Plaintiff notes that Detective Hammer falsely represented at the habeas hearing that the victim's neighbor, Joshua Moretz, heard glass breaking on the day of the incident and saw a black vehicle in the victim's driveway. Plaintiff points, however, to the Bethlehem Burglary's Incident Report Form which references another witness, Michael Howard, who told Detective Hammer that he heard "something smash" at about 9:00 a.m. on the day of the incident but did not see anything outside. That same Report also notes that Joshua Moretz saw the black vehicle in his neighbor's driveway but made no mention of glass breaking. (Def.'s Ex. M.) Plaintiff now claims that Detective Hammer falsely represented that only one witness, Moretz, reported glass breaking and seeing the vehicle, when there were actually two witnesses.

While this testimony constitutes a potential discrepancy, Plaintiff has presented no evidence that this statement was an actual fabrication as opposed to a mere misstatement. As noted above, "testimony that is incorrect or simply disputed should not be treated as fabricated merely because it turns out to have been wrong." Halsey, 750 F.3d at 295. Moreover, and perhaps more importantly, Plaintiff has made no showing that the fabricated evidence was so significant that it could have affected the outcome of the criminal case.[3]

In short, Plaintiff has failed to produce any evidence from which a jury could find that Detective Hammer knowingly fabricated evidence or offered, in bad faith, fabricated evidence that was

---

[3] In support of his opposition, Plaintiff relies on a case from the United States Court of Appeals for the Second Circuit, Barnes v. City of New York, 68 F.4th 123 (2d Cir. 2023). There, the Second Circuit found that the plaintiff had plausibly pled a fabrication of evidence claim and reversed the district court's dismissal of the claim under Federal Rule of Civil Procedure 12(b)(6). Specifically, the Court found that Plaintiff had set forth more than a "formulaic recitation of the elements" when he alleged that the police officers knowingly lied to the prosecutor in relaying that they witnessed the plaintiff sell drugs. Id. at 129.
Here, Plaintiff's fabrication of evidence claim also survived the motion to dismiss stage as I found that Plaintiff's allegations in his complaint, taken as true, adequately stated a claim. Such bare allegations are insufficient, however, to survive summary judgment, and Plaintiff has failed to come forth with any evidence to create a genuine dispute of material fact.

so significant that it led to the criminal charges against Plaintiff. By all accounts, Detective Hammer's recitation of his investigation was factually accurate. At best, a reasonable jury could find that Detective Hammer, in the natural course of repeating his investigation, misstated some minute details, none of which were significant to the overall evidence he uncovered connecting Plaintiff to the Bethlehem Burglary. As such, I find that because Plaintiff has failed to meet his "notable bar" of establishing some fabrication of evidence by Detective Hammer that was so significant that it affected his state criminal proceedings, this is not the "unusual case" where Plaintiff can survive summary judgment.[4]

## B. State Law Malicious Prosecution Claim

A claim of malicious prosecution under Pennsylvania law requires a plaintiff to demonstrate that: (1) defendant initiated a criminal proceeding; (2) the proceeding terminated in the plaintiff's favor; (3) defendant initiated the proceeding without probable cause; and (4) defendant acted maliciously or with a purpose apart from bringing plaintiff to justice. See Donahue v. Gavin, 280 F.3d 371, 379 (3d Cir. 2002) (citing Hilfirty v. Shipman, 91 F.3d 573, 579 (3d Cir. 1996)). "The Pennsylvania and federal standards regarding the existence of probable cause are the same." DeBellis v. Kulp, 166 F. Supp. 2d 255, 280 (E.D. Pa. 2001) (citing Renk v. City of Pittsburgh, 537 Pa. 68, 641 A.2d 289, 293 (1994)).

Detective Hammer contends that the undisputed evidence establishes that he had probable cause to initiate the proceedings against Plaintiff, and thus, any malicious prosecution claim must fail.

---

[4] The Motion for Summary Judgment also asserts that "courts in the Third Circuit have held that a fabrication of evidence claim requires deprivation liberty without distinction between a specific charge and any such deprivation." (Def.'s Mem. Supp. Summ. J. 12.) Detective Hammer asserts that, in a prior opinion dismissing other claims, I already found that Plaintiff suffered no additional deprivation of liberty because of the criminal charges in the Bethlehem Burglary. (see Memorandum Opinion, ECF No. 111, at p. 10.) As such, he seeks dismissal of the fabrication of evidence claim on the same ground.
As I noted in my June 29, 2023 Order denying Detective Hammer's Motion for Reconsideration, the Third Circuit has yet to opine on whether or what type of deprivation of liberty is required for a fabrication of evidence claim, and case law outside the Third Circuit suggests that such deprivation may not be required. Nonetheless, as I grant summary judgment on the fabrication of evidence claim on other grounds, I need not address this argument here.

The United States Supreme Court has characterized probable cause as a "fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213, 232 (1983). A showing of probable cause thus requires "proof of facts and circumstances that would convince a reasonable, honest individual that the suspected person is guilty of a criminal offense." Lippay v. Christos, 996 F.2d 1490, 1502 (3d Cir. 1993). "Although probable cause calls for more than mere suspicion, it does not mandate that the evidence at the time of the arrest be sufficient to prove guilt beyond a reasonable doubt." Nimley v. Baerwald, No. 02-7427, 2004 WL 1171733, at *7 (E.D. Pa. May 26, 2004) (citing Warlick v. Cross, 969 F.2d 303, 306 (7th Cir. 1992); Orsatti v. N.J. State Police, 71 F.3d 480, 482–83 (3d Cir. 1995)). Indeed, the ultimate finding of guilt or innocence, or even dismissal of charges arising out of an arrest and detention has no bearing on whether the arrest was valid. Pansy v. Preate, 870 F. Supp. 612, 617–18 (M.D. Pa. 1994) (citing Pierson v. Ray, 386 U.S. 547, 555 (1967)), aff'd, 61 F.3d 896 (3d Cir. 1995).

The probable cause inquiry is entirely objective, and generally, the existence of probable cause is a factual issue. Halsey, 750 F.3d at 300 (3d Cir. 2014). As such, it is "inappropriate for a court to grant a defendant officer's motion for summary judgment in a malicious prosecution case if there are underlying factual disputes bearing on the issue or if 'reasonable minds could differ' on whether he had probable cause for the institution of criminal proceedings based on the information available to him. Id. Nonetheless, in appropriate cases, a court may conclude that probable cause existed as a matter of law if the evidence, viewed most favorably to the plaintiff, reasonably would not support a contrary factual finding. See Sherwood v. Mulvihill, 113 F.3d 396, 401 (3d Cir. 1997); see also Telepo v. Palmer Twp., 40 F. Supp. 2d 596, 611 (E.D. Pa. 1999) (holding that "where the uncontroverted facts could not lead a reasonable person to find that probable cause was lacking," the court may decide the issue), aff'd 242 F.3d 371 (3d Cir. 2000).

14

Whether any particular set of facts suggest that a criminal charge is justified by probable cause requires an examination of the elements of the crime at issue. Wright v. City of Philadelphia, 409 F.3d 595, 602 (3d Cir. 2005). Plaintiff here was charged with five crimes: burglary, theft by unlawful taking of movable property, receiving stolen property, criminal trespass, and criminal mischief. Under Pennsylvania law:

- A person commits the offense of burglary if, "with the intent to commit a crime therein, the person . . . enters a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the time of the offense no person is present." 18 Pa. Cons. Stat. § 3502(a)(3).

- A person is guilty of theft of movable property "if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof." 18 Pa. Cons. Stat. § 3921(a).

- A person is guilty of receiving stolen property if he "intentionally receives, retains or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner." 18 Pa. Cons. Stat. § 3925.

- A person commits criminal trespass if he "knowing that he is not licensed or privileged to do so, he . . . breaks into any building or occupied structure . . ." 18 Pa. Cons. Stat. § 3503(a)(1)(ii).

- A person is guilty of criminal mischief if he "intentionally damages real or personal property of another." 18 Pa. Cons. Stat. § 3304(a)(5).

Here, the following undisputed evidence establishes that Detective Hammer had probable cause to bring all of the foregoing charges against Plaintiff:

- On January 10, 2019, Detective Hammer began investigating the January 9, 2019 Bethlehem Burglary, wherein the victim reported that someone had entered her residence by breaking a glass window and that a television, a laptop computer, jewelry, and a jewelry box were taken during the burglary. (Def.'s Ex. C, 5:8–7:2.)

- In the course of his investigation, Detective Hammer contacted the Buy Sell and Trade Pawnshop, which later on reported a gentleman had come in and sold them the television and laptop computer that Detective Hammer was looking for. The pawnshop had taken a copy of the driver's license of the individual who sold them these items, and that license matched Plaintiff's driver's license. (Id. at 8:22–10:24.)

- Detective Hammer reviewed the stolen laptop and observed that the hard drive had been wiped clean. Plaintiff's name and telephone number were listed as the only contact in the computer. (Id. at 11:11–18.)

15

- A neighbor of the victim in the Bethlehem Burglary reported a Black Dodge Caliber in the victim's driveway on the date of the robbery. The Dodge Caliber resembles the black Dodge Journey owned by Plaintiff in December 2018, January 2019, and February 2019. (Id. at 7:19–8:8; Williams's Dep. 25:13–18.)

- Another burglary had previously occurred on December 28, 2018 at 1821 West Miner Street, Emmaus, Pennsylvania. The Emmaus Police Department Incident Report Number EM-18-07009 listed Plaintiff as a suspect in that robbery. (Def.'s Ex. D.)

- Plaintiff admitted to being present at the scene of the Whitehall Burglary that occurred on February 4, 2019. Plaintiff stated that he was the driver of his 2010 Black Dodge Journey, along with a co-conspirator as a passenger. Plaintiff also admitted that, on February 6, 2019, he attempted to sell an Apple MacBook Pro, stolen during the Whitehall Burglary. (Mazzitelli Decl. ¶¶ 4–5; Williams's Dep. 21:7–21.)

- Deputy Chief Mazzitelli of Whitehall Township provided Detective Hammer with the digital forensic analysis of Plaintiff's cellular phones seized in the Whitehall Burglary investigation. That investigation showed that, soon after the Bethlehem Burglary, a picture was taken of a flat screen television and an internet search related to the value of an Apple MacBook computer was performed on the phone. (Mazzitelli Decl. ¶¶ 11–16; Def's Ex. E ¶ 16; Def.'s Ex. F, N.T. 20;1–18.)

In an effort to undercut this undisputed evidence establishing a reasonable belief that Plaintiff had committed the charged crimes, Plaintiff posits two arguments, neither of which defeat the existence of probable cause. First, Plaintiff sets forth a litany of evidence that was lacking from Detective Hammer's investigation. Specifically, he claims that there were no witnesses who saw him at the Bethlehem Burglary home, no video surveillance, no fingerprints or DNA at the crime scene, no matching license plates between his car and the car seen at the crime, no indication about when and where the photos recovered from his phone were taken, and no clear connection between the Bethlehem Burglary and the Emmaus and Whitehall Burglaries.

This argument conflates the standard for probable cause with that of guilt beyond a reasonable doubt. In a probable cause analysis, belief of guilt need only be reasonable as opposed to certain. Wright, 409 F.3d at 602. "Probable cause does not require that the prosecution have sufficient evidence to prove guilt beyond a reasonable doubt." Peterson v. Att'y Gen. Pa., 551 F. App'x 636, 629 (3d Cir. 2014) (further quotations omitted). Because the evidentiary standard for probable cause is

16

significantly lower than the standard required for conviction, it is irrelevant in a probable cause inquiry whether a person is later acquitted of the crime for which he was arrested and charged. Wright, 409 F.3d at 602. Thus, the mere fact that Detective Hammer did not have all possible evidence or even any "smoking gun" evidence connecting Plaintiff to the crime scene does not obviate the fact that Detective Hammer had sufficient proof of facts and circumstances "that would convince a reasonable, honest individual" that Plaintiff was guilty of the crimes charged.[5] Lippay v. Christos, 996 F.2d 1490, 1502 (3d Cir. 1993).

Alternatively, Plaintiff makes a somewhat confusing argument that Detective Hammer received the stolen items—specifically the television and computer—from a pawnshop that was not in his jurisdiction, and thus had no authority to charge Plaintiff. In support, Plaintiff cites to two sections of Municipal Police Jurisdiction Act to contend that probable cause cannot be supported by evidence obtained outside an officer's jurisdiction.[6] However, aside from the fact that Plaintiff has no evidence that Detective Hammer acted outside of his municipal authority and in violation of the Municipal

---

[5] I note that, although the state court dismissed all but the receiving stolen property charges against Plaintiff in a pre-trial habeas corpus proceeding, the standard in such a proceeding is different from the probable cause inquiry. "A pre-trial *habeas corpus* motion is the proper means for testing whether the Commonwealth has sufficient evidence to establish a *prima facie* case . . . . 'To demonstrate that a *prima facie* case exists, the Commonwealth must produce evidence of every material element of the charged offense(s) as well as the defendant's complicity therein.'" Commonwealth v. Dantzler, 135 A.3d 1110, 1112 (Pa. Super. Ct. 2016) (quotations omitted). Such proceedings give a defendant the opportunity to test the Commonwealth's evidence through cross-examination and to present additional evidence.

Unlike the *prima facie* case standard, "it is only the probability, and not a prima facie showing, of criminal activity that is the standard of probable cause." Illinois v. Gates, 462 U.S. 213, 235 (1983) (quotation omitted); see also Commonwealth v. Dennis, 344 A.2d 713, 715 (Pa. Super. 1975). As such, the state court's dismissal of some of the charges against Plaintiff in a pre-trial habeas proceeding does not create any inconsistency with my probable cause determination.

[6] 42 Pa.C.S. § 8952 states, "Any duly employed municipal police officer shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions of that office anywhere within his primary jurisdiction as to: (1) Any offense which the officer views or otherwise has probable cause to believe was committed within his jurisdiction. (2) Any other event that occurs within his primary jurisdiction and which reasonably requires action on the part of the police in order to preserve, protect or defend persons or property or to otherwise maintain the peace and dignity of this Commonwealth." 42 Pa.C.S. § 8953 then goes on to provide when a municipal police officer who is beyond the territorial limits of his primary jurisdiction has the power and authority to enforce the laws of the Commonwealth.

Police Jurisdiction Act, such a finding alone would not undermine probable cause for purposes of a malicious prosecution claim.[7]

Taking all facts and evidence the light most favorable to Plaintiff, I find that no reasonable jury could conclude that Detective Hammer lacked probable cause to charge Plaintiff with burglary and related crimes. Detective Hammer was able to connect Plaintiff to the Bethlehem Burglary through evidence from the pawnshop that bought the goods stolen from the house, the presence of a car that matched the description of Plaintiff's car, a search of Plaintiff's phone that contained pictures of goods resembling the stolen goods, and Plaintiff's suspected or admitted participation in two other burglaries with similar circumstances. Although such evidence was not necessarily sufficient on which to find that Plaintiff was guilty of the charged crimes beyond a reasonable doubt, it was sufficient under the probable cause standards for Detective Hammer to bring the charges.

Accordingly, I will dismiss this claim.

## IV. CONCLUSION

In light of the foregoing, I will grant Detective Hammer's Motion for Summary Judgment and dismiss all remaining claims with prejudice. An appropriate Order follows.

---

[7] Plaintiff also contends that the document with Plaintiff's driver's license provided by the Buy, Sell and Trade Pawnshop did not comply with the record-keeping requirements of the City Ordinance. (Pl.'s Ex. O.) Plaintiff fails to explain how the pawnshop's alleged violations of its record-keeping duties would undermine Detective Hammer's determination of probable cause.